# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 28, 2010

No. 09-40520
Summary Calendar

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

SALOMON RUIZ,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, DeMOSS, and DENNIS, Circuit Judges.

PER CURIAM:

Salomon Ruiz challenges the sentence he received after he pled guilty to bribery of a public official in violation of 18 U.S.C. §§ 2 and 201. He argues that the district court erred in applying the cross-reference provision in United States Sentencing Guidelines (U.S.S.G.) § 2C1.1(c) to determine his base offense level, increasing his offense level for carrying a weapon during the commission of his offense, and denying him a two-level decrease in his offense level under the "safety-valve" provision. Ruiz also argues that his sentence was substantively unreasonable. For the following reasons, we affirm.

No. 09-40520

I.

Salomon Ruiz (Ruiz), a Customs and Border Protection (CBP) agent, was suspected of assisting drug-trafficking organizations in Starr County, Texas. Between December 2007 and April 2008, the Federal Bureau of Investigation (FBI) received information from CBP and the Drug Enforcement Administration detailing Ruiz's suspicious behavior. For instance, on April 29, 2008, Ruiz was heard alerting drug trafficking associates via cell phones that a law enforcement operation was underway. Ruiz had been dispatched to assist in executing a search warrant in Roma, Texas, but when the warrant team arrived at the address, it appeared that the occupants had just departed.

On May 30, 2008, a cooperating witness (the CW) agreed to pose as a drug trafficker with high-level ties to members of the Gulf Cartel, a drug-trafficking organization. The CW met with Raul Ruiz, Ruiz's brother who was involved in drug trafficking. Raul Ruiz later introduced the CW to Ruiz. At the time of the meeting, Ruiz was on duty and was wearing his CBP uniform and duty sidearm. Ruiz informed the CW that he was currently assisting several other drug-trafficking organizations in Starr County and could assist the CW's operation by ensuring there was no CBP presence near illegal drug crossing locations, monitoring law enforcement radio traffic, and briefly escorting drug-laden vehicles. Ruiz told the CW that he required a $10,000 retainer fee and that he charged $4,000 to escort a car and $6,000 to escort a van.

The CW paid Ruiz $4,000 for his future assistance and told Ruiz that he planned on moving about 25 or 30 kilograms of cocaine. Ruiz told the CW that he would assist him by providing the locations of sensors used by immigration authorities, maintaining surveillance, and keeping other law enforcement officers away from the area while the drugs were being smuggled.

No. 09-40520

After several more meetings and conversations to coordinate the operation, Ruiz assisted the CW in smuggling 25 kilograms of cocaine through Starr County. This was a controlled operation coordinated by FBI agents. Ruiz, who was on duty and wearing his duty sidearm, assisted the CW by purposely activating a CBP sensor. Ruiz also provided counter-surveillance information to the CW for safe passage to the highway. Ruiz received another $4,000 for his assistance and reminded the CW that he was still owed $6,000 for the retainer fee, which the CW later paid.

Ruiz also introduced the CW to Leonel Morales, Ruiz's cousin, who agreed to provide counter surveillance for drug smuggling in another county and who later assisted the CW in transporting 20 kilograms of cocaine. Ruiz also agreed to assist the CW with a future drug smuggling operation.

Ruiz was charged in a four-count indictment with bribery of a public official (count one) and committing various controlled substance offenses. He pled guilty to count one, pursuant to a written plea agreement. Probation completed a Presentence Investigation Report (PSR). The PSR applied U.S.S.G. § 2C1.1(c), the cross-reference provision within the bribery guideline. Under § 2C1.1(c), Ruiz's base offense level accounting for the quantity of marijuana and cocaine attributable to his relevant conduct was 34. His offense level was increased by two levels under § 2D1.1(b)(1) because he possessed a firearm while committing the offense and increased by another two levels under § 3B1.3 because he abused his position of trust as a CBP agent. After a two level reduction for acceptance of responsibility, Ruiz's total offense level was 36.

Ruiz filed objections to the PSR. He argued, among other things, that: the cross-referencing provision did not apply because he could not have entered into an illegal conspiracy with the Government's undercover agent, drivers, and passengers; the firearm enhancement did not apply because he possessed his duty sidearm only as an extension of his uniform and did not use, brandish, or

3

No. 09-40520

remove it during the commission of the offense; and denial of the guidelines' "safety valve" provision based on his possession of a firearm was error.

At sentencing, the district court granted the Government's motion for an additional one-level reduction of Ruiz's offense level for acceptance of responsibility. Ruiz again argued his objections to the application of the cross-referencing provision, the firearm enhancement, and the abuse of trust enhancement. The district court overruled each objection. Ruiz also requested a downward departure on the basis that the recommended guidelines range of imprisonment overstated the severity of his offense. The district court adopted the factual findings in the PSR, lowered Ruiz's offense level to 35 as a result of the additional one-point reduction for acceptance of responsibility, and noted that the guidelines range of imprisonment was 168 to 180 months of imprisonment because the statutory maximum was 15 years. *See* 18 U.S.C. § 201(b)(2). The district court considered the 18 U.S.C. § 3553(a) factors and concluded that a guidelines sentence satisfied those factors. The district court sentenced Ruiz to 168 months of imprisonment and three years of supervised release. Ruiz timely appealed.

## II.

Because Ruiz was sentenced after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), this court reviews his sentence for reasonableness in light of the factors set forth in § 3553(a). *See United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005). A district court must consider all facts relevant to sentencing in the same manner as before *Booker* in determining the advisory guidelines range. *United States v. Alonzo*, 435 F.3d 551, 553 (5th Cir. 2006). This court must determine whether the sentence imposed is procedurally sound and substantively reasonable. *Gall v. United States*, 552 U.S. 38, 48-51 (2007).

4

No. 09-40520

A sentence is procedurally sound if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51. This court reviews a district court's application of the guidelines de novo and its factual findings for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

A presumption of reasonableness applies to sentences that fall within the guidelines. *Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Gutierrez-Hernandez*, 581 F.3d 251, 254 (5th Cir. 2009). Any challenge to that presumption is foreclosed by *United States v. Mondragon-Santiago*, 564 F.3d 357, 367 & n.7 (5th Cir.), *cert. denied*, 130 S. Ct. 192 (2009).

## A.

Ruiz argues that the district court procedurally erred when it applied the cross-reference provision in § 2C1.1(c) to determine his base offense level. He avers that only subsections (a) and (b) should have been used to calculate his sentence.

U.S.S.G. § 2C1.1(a) provides the base offense level for the offense of receiving a bribe. Because Ruiz was a public official, his base offense level under subsection (a) was 14. Subsection (b) provides a list of enhancements for specific offense characteristics. Under subsection (b), Ruiz received a two-level enhancement because the offense involved more than one bribe, a four-level enhancement because the value of the payment exceeded $5,000, and another four-level enhancement because Ruiz was a public official in a sensitive position. His total adjusted offense level under subsections (a) and (b) was 24.

No. 09-40520

Subsection (c)(1), however, provides an alternative base offense level if the offense was "committed for the purpose of facilitating the commission of another criminal offense." If so, the court is to "apply the offense guideline applicable to a conspiracy to commit that other offense, if the resulting offense level is greater than that determined" under subsections (a) and (b). § 2C1.1(c). Here, the offense of receiving a bribe was committed for the purpose of facilitating the commission of the offense of conspiracy to possess with intent to distribute 5 or more kilograms of cocaine. For that offense, Ruiz would receive a base offense level of 34 for the amount of drugs attributable to him, a two-level enhancement for possessing a firearm, and another two-level enhancement for abusing a position of trust, for a total adjusted offense level of 38. *See* §§ 2C1.1(c), 2D1.1(a), 2D1.1(b)(1), 3B1.3.

Ruiz argues that he could not have conspired with the cooperating witness as a matter of law and therefore the court should not have applied the cross reference in subsection (c)(1). The plain language in subsection (c)(1), however, requires that the bribery offense be committed for the "purpose of facilitating" another offense and does not require the consummation of the offense the defendant sought to commit. The offense Ruiz sought to commit was conspiracy to possess with intent to distribute cocaine. Subsection (c)(1) applies.

Section 2C1.1's commentary validates this conclusion. It provides that "if a bribe was given to a law enforcement officer to allow the smuggling of a quantity of cocaine, the guideline for conspiracy to import cocaine would be applied if it resulted in a greater offense level." § 2C1.1 cmt. background. Because Ruiz took bribes to facilitate the smuggling of cocaine, his offense falls squarely under the scenario the commentary describes. The district court

correctly cross referenced the drug guidelines to determine Ruiz's total offense level.[1]

## B.

Ruiz also argues that, even if the district court correctly applied the cross-reference provision, the district court erred when it enhanced his offense level by two under § 2D1.1(b)(1) for possessing a weapon in connection with the offense. Ruiz cites commentary to the guideline that states that the adjustment does not apply if it "is clearly improbable that the weapon was connected with the offense." *See* § 2D1.1 cmt. 3. Ruiz notes that the PSR states that he wore his duty sidearm when he met with the CW and agreed to provide ancillary support for the narcotics for a fee, but he argues that there is no evidence that he or the CW possessed a firearm when the CW actually transported the cocaine. He adds that there is likewise no evidence that he knew or should have known that the CW or any co-conspirator possessed a firearm. Finally, he argues that, even if he wore his sidearm as part of his uniform when the drug transport occurred, there is no evidence that the possession of the weapon was in connection with the offense.

The district court's determination that § 2D1.1(b)(1) applies is a factual finding reviewed for clear error. *United States v. Jacquinot*, 258 F.3d 423, 430 (5th Cir. 2001). A factual finding is not clearly erroneous if it is plausible, considering the record as a whole. *United States v. Scher*, 601 F.3d 408, 413 (5th Cir. 2010). The district court may rely on the information in a PSR when, as

---

[1] The conclusion this court reaches today that subsection (c)(1)'s cross reference may apply even if the defendant committed the bribery offense for the purpose of conspiring with a government agent to possess an illegal substance is consistent with this court's two recent unpublished opinions concerning the applicability of the subsection. *See United States v. Williams*, 332 F. App'x 937, 940 (5th Cir. 2009); *United States v. Carr*, 303 F. App'x 166, 169-70 (5th Cir. 2008).

here, the defendant did not rebut any of the findings contained therein. *See United States v. Ollison*, 555 F.3d 152, 164 (5th Cir. 2009).

Section 2D1.1(b)(1) allows for a two-level sentence enhancement "[i]f a dangerous weapon (including a firearm) was possessed." "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." § 2D1.1 cmt. 3. "For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." *Id*. The Government bears the burden of proving by a preponderance of the evidence that the defendant possessed the weapon and may do so by showing "that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant," which suffices to establish that the defendant personally possessed the weapon. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764-65 (5th Cir. 2008). If the Government meets that burden, the burden shifts to the defendant to show that it was clearly improbable that the weapon was connected with the offense. *United States v. Cooper*, 274 F.3d 230, 246 n.8 (5th Cir. 2001).

In *United States v. Partida*, 385 F.3d 546, 562 (5th Cir. 2004), two law enforcement officers convicted of drug trafficking crimes challenged the evidentiary bases of their § 2D1.1(b)(1) enhancements. One of the officers, Partida, was the acting chief of police of Donna, Texas. *Id*. at 551. He argued that the guideline did not apply because there was no evidence demonstrating that he possessed a firearm while escorting the drug dealer, turned government informant, through his patrol district in exchange for money. *Id*. at 562. This court rejected the argument, noting that the police department had in place a policy that required officers to carry their weapons. *Id*. at 563. The other officer argued that, although he possessed the weapon while escorting the drug dealer through Donna, he did not possess a weapon while he committed the extortion offense with which he was charged. *Id*. This court concluded that, because the

officer was being sentenced under the cross-referencing provisions of § 2C1.1(c)(1), it mattered not whether the officer was armed when he committed the extortion offense because he was admittedly armed when he escorted the drug dealer. *Id.*

Ruiz seeks to distinguish this case from *Partida* based on the statement in *Partida* that the Government was required to show that "the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred." *Id.* at 562 (quoting § 2D1.1 cmt. 3). He contends that no evidence exists to show that he wore his duty sidearm where the drugs were stored or where part of the transaction occurred. He adds that the evidence fails to demonstrate that he or the CW possessed a dangerous weapon when the drugs were "actually being smuggled" and that absent such evidence the enhancement was improper. Ruiz's argument is unavailing. Ruiz acknowledges the PSR's statement that he wore his duty sidearm when he met with the CW and agreed to provide ancillary support for the narcotics for a fee. The PSR set forth that Ruiz carried a firearm "where part of the transaction occurred." The PSR stated that Ruiz met with the CW, while in uniform and while carrying his sidearm, to discuss the terms of his assistance in smuggling the drugs and that, while wearing his sidearm, Ruiz assisted the CW in smuggling and transporting 25 kilograms of cocaine.

That Ruiz never used or brandished his sidearm is irrelevant. *See United States v. Marmolejo*, 106 F.3d 1213, 1216 (5th Cir. 1997). The district court's finding that Ruiz possessed a firearm during the commission of a drug-trafficking offense is not clearly erroneous because the finding is plausible in light of the record read as a whole. *See Scher*, 601 F.3d at 413. Therefore, the district court did not err when it applied § 2D1.1(b)(1) to enhance Ruiz's sentence.

## C.

No. 09-40520

Ruiz also argues that the district court erred when it determined that he was not eligible for a two-level reduction under §§ 2D1.1(b)(11) and 5C1.2(a)(1)-(5), the guidelines "safety valve," because he possessed a firearm.   Under § 5C1.2, for a defendant convicted of certain controlled substance offenses, "the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence" when, among other requirements, "the defendant did not . . . possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." *United States v. Matias*, 465 F.3d 169, 171 (5th Cir. 2006) (quoting § 5C1.2(a)(2)).   A defendant who meets the safety valve criteria may receive a two-level reduction in his offense level under § 2D1.1(b)(11), even if, like Ruiz, he does not face a mandatory minimum sentence. *See id.* at 171-72.   The district court's factual findings regarding a safety-valve adjustment are reviewed for clear error.  *United States v. Miller*, 179 F.3d 961, 963-64 (5th Cir. 1999).

Ruiz acknowledges that the reduction is not available if a defendant possessed a firearm but argues that, even if the district court correctly enhanced his sentence under § 2D1.1(b)(1), such a finding did not operate to bar him from the safety-valve reduction.   In support of his argument, he cites a Tenth Circuit case for the proposition that § 5C1.2(a)(2) is narrower than § 2D1.1(b)(1) and requires "actual possession" by a defendant.  *See United States v. Zavala-Rodriguez*, 379 F.3d 1182, 1186 (10th Cir. 2004).

In *Matias*, this court noted the Tenth Circuit's minority view and rejected the argument that Ruiz advances.   465 F.3d at 173-74 n.14.   The court stated that it had held "in numerous contexts that the concept of possession of a weapon encompasses both actual possession and constructive possession" and held that there was no reason to exclude constructive possession from the safety valve provision.  *Id.* at 174 (citations omitted).   Because Ruiz "possessed" a

10

firearm during his offense, the district court did not err when it declined to reduce Ruiz's offense level under the safety valve provision.

## D.

Finally, Ruiz argues that his 168-month sentence was substantively unreasonable because (1) when the district court cross referenced his offense it vastly overstated the severity of the bribery case for which he was convicted, and (2) application of § 2D1.1(b)'s enhancement for possessing a firearm and § 3B1.3's enhancement for abusing a position of trust effectively subjected him to double or triple punishment for his offense conduct.

Ruiz did not object to the reasonableness of his sentence before the district court; therefore this court's review is for plain error. *See United States v. Peltier*, 505 F.3d 389, 391-92 (5th Cir. 2007). To establish plain error, Ruiz must first show a forfeited error that is clear or obvious and that affects his substantial rights. *See Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009). If he makes such a showing, this court may exercise its discretion to correct the error but only if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *See id.* (citation omitted).

"A discretionary sentence imposed within a properly calculated guidelines range is presumptively reasonable." *United States v. Campos-Maldonado*, 531 F.3d 337, 338 (5th Cir. 2008) Ruiz's history and characteristics did not require a sentence lower than the sentence the guidelines provide. *See Rita*, 551 U.S. at 360. "[T]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) with respect to a particular defendant." *Campos-Maldonado*, 531 F.3d at 339. A defendant's disagreement with the propriety of the sentence imposed does not suffice to rebut the presumption of reasonableness that attaches to a within-guidelines sentence. *See United States v. Gomez-Herrera*, 523 F.3d 554, 565-66 (5th Cir. 2008); *United States v. Rodriguez*, 523 F.3d 519, 526 (5th Cir. 2008). Ruiz has not shown that his

No. 09-40520

sentence was substantively unreasonable, *see Gall*, 552 U.S. at 51, nor has he rebutted the presumption of reasonableness that attaches to his within-guidelines sentence. *See Gomez-Herrera*, 523 F.3d at 565-66. Accordingly, he has not shown any error, plain or otherwise.

### III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.