# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 30, 2013

No. 12-40317

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

ABDON REQUEJO, JR.,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
D. Ct. No. 7:10-CR-1103-3

Before DENNIS, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Defendant-appellant Abdon Requejo, Jr., pleaded guilty to conspiring to possess with intent to distribute more than 100 but less than 1000 kilograms of marijuana. The district court sentenced Requejo to 108 months' imprisonment after imposing a two-level enhancement for possession of a dangerous weapon under § 2.D1.1(b)(1) of the U.S. Sentencing Guidelines. On appeal, Requejo argues that the district court clearly erred in finding that the dangerous weapon enhancement applied. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-40317

Requejo's presentence investigation report (PSR) recommended that the district court impose the two-level enhancement based on the fact that one of Requejo's co-conspirators, Nelson Juan Resendez-Requejo ("Nelson Resendez"), threw a handgun out of the truck he was driving while being pursued by police before his arrest. Requejo objected to the enhancement. The district court overruled Requejo's objection; adopted the factual findings of the PSR; granted Requejo a one-level reduction under Sentencing Guidelines § 3E1.1(b) for acceptance of responsibility; and concluded that his guidelines range was 108 to 135 months of imprisonment. The district court selected a sentence at the bottom of that range, 108 months imprisonment, and ordered four years of supervised release. Requejo timely appealed.

"Section 2d1.1(b)(1) of the Guidelines allows for a two-level sentence enhancement '[i]f a dangerous weapon (including a firearm) was possessed' during certain drug offenses." *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). The relevant application note of the guidelines commentary provides:

> The enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet.

U.S.S.G. § 2D1.1 cmt. 11(A); *see United States v. Ruiz*, 621 F.3d 390, 396 (5th Cir. 2010). "Before a sentencing court can apply § 2D1.1(b)(1), the government must prove weapon possession by a preponderance of the evidence. It can do that in two ways." *United States v. Zapata-Lara*, 615 F.3d 388, 390 (5th Cir. 2010) (citation omitted).

> First, it can prove that the defendant personally possessed the weapon, by showing a temporal and spatial relationship of the

2

weapon, the drug trafficking activity, and the defendant. To make that showing, the government must provide evidence that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred. "Alternatively, when another individual involved in the commission of an offense possessed the weapon, the government must show that the defendant could have reasonably foreseen that possession."

*Id.* (citations omitted) (quoting *United States v. Hooten*, 942 F.2d 878, 882 (5th Cir. 1991)).

The alternative "foreseeability" standard "derives from U.S.S.G. § 1B1.3(a)(1), which renders a defendant accountable for any foreseeable act by a codefendant taken 'in furtherance of the execution of [a] jointly undertaken criminal activity.' The sentencing court may infer foreseeability from the coparticipant's knowing possession of the weapon. Other circumstances may also give rise to an inference of foreseeability." *Hooten*, 942 F.2d at 882 (internal citations omitted). We have long held that a large "amount of drugs . . . delivered and [high] street value increase the likelihood — and thus foreseeability — that those involved in the conspiracy will have dangerous weapons." *Cisneros-Gutierrez*, 517 F.3d at 766; *see also United States v. Aguilera-Zapata*, 901 F.2d 1209, 1215-16 (5th Cir. 1990) (stating that because "firearms are tools of the trade of those engaged in illegal drug activities[,] . . . [s]entencing courts[] . . . may ordinarily infer that a defendant should have foreseen a co-defendant's possession of a dangerous weapon, such as a firearm, if the government demonstrates that another participant knowingly possessed the weapon while he and the defendant committed the offense by jointly engaging in concerted criminal activity involving a quantity of narcotics sufficient to support an inference of intent to distribute" (internal quotation marks omitted)). "If the Government meets [its] burden[] [of proving weapon possession by a preponderance of the evidence], the burden shifts to the

defendant to show that it was clearly improbable that the weapon was connected with the offense." *Ruiz*, 621 F.3d at 396; *see also* U.S.S.G. § 2D1.1 cmt. 11(A).

"The district court's determination that § 2D1.1(b)(1) applies is a factual finding reviewed for clear error." *Ruiz*, 621 F.3d at 396. "A factual finding is not clearly erroneous if it is plausible, considering the record as a whole." *Id.* "The district court may rely on the information in a PSR when, as here, the defendant did not rebut any of the findings contained therein." *Id.*

Requejo's indictment alleged that he conspired with Nelson Resendez, Jesus Resendez, Santiago Medina, and Jorge Barrera, all of whom also pleaded guilty to the marijuana possession and distribution conspiracy. The following facts were set forth in the PSR and adopted by the district court. On February 9, 2010, agents engaged in surveillance of a warehouse that was rented by Jesus Resendez. Agents observed a tractor-trailer parked at the warehouse, the arrival of Jesus Resendez in a Lincoln sedan, and the subsequent arrival of a Chevrolet pickup truck and a Ford pickup truck. In addition to Jesus Resendez, Nelson Resendez, Medina, and Requejo were observed at the warehouse. Jesus Resendez drove the Chevrolet to a Home Depot and returned to the warehouse after purchasing gloves and filtered masks. All of the co-conspirators were seen leaving the warehouse at about 6:17 p.m. in either the Lincoln or the Ford.

The Ford arrived at a residence in McAllen, Texas, at about 7:15 p.m., and the Lincoln arrived at the residence about 10 minutes later. The Ford departed the residence after a few minutes and continued to make trips to the warehouse. At about 8:45 p.m., agents conducted traffic stops on the Lincoln and Ford at different locations. Jesus Resendez was driving the Lincoln, with Requejo and Medina as passengers. All three were arrested.

When agents attempted to stop the Ford, they observed Nelson Resendez throw a handgun out of the passenger side window. A two-minute pursuit ensued, during which Nelson Resendez traveled at a high speed and disregarded

several stop signs in a neighborhood. After his arrest, Nelson Resendez stated to police that he was hired to load contraband into the tractor-trailer at the warehouse; he was aware that he was being followed by agents and attempted to discard the firearm; and he owned the firearm.

The tractor-trailer departed the warehouse at about 8:16 p.m. and traveled to a truck stop in Pharr, Texas. Agents made contact with Barrera at the truck stop and discovered that Barrera had been communicating with Nelson Resendez through cellular telephones. A search of the tractor-trailer uncovered 97 bundles of marijuana, with a net weight of 967 kilograms, inside the trailer covered by rotten fruit. Agents who searched the warehouse the next day did not uncover any additional contraband but did find boxes of mold-covered limes, bundles of empty cardboard boxes, rubber gloves, and filtered masks.

The PSR reported that Nelson Resendez appeared to be the most culpable, was responsible for recruiting Jesus Resendez to rent the warehouse, assisted in loading the marijuana, and claimed ownership of the firearm. Jesus Resendez was responsible for renting the warehouse, and Barrera was responsible for transporting the marijuana in the tractor-trailer. The PSR held Requejo and Medina responsible for the marijuana based on their presence at the warehouse. Requejo agreed when he pleaded guilty that he and all the other defendants admitted to assisting in the loading of the marijuana.

Applying our precedent to the undisputed facts reported in the PSR and adopted by the district court, we conclude Requejo has failed to demonstrate clear error in the district court's finding that the enhancement applies because Nelson Resendez's possession of the handgun was foreseeable to Reqeujo. Because the PSR indicates that agents observed Nelson Resendez throw the handgun out of the window of the Ford and that he admitted to owning the gun and attempting to discard it, there is no question that the government "show[ed] a temporal and spatial relationship of the weapon, the drug trafficking activity,

No. 12-40317

and [Nelson Resendez]," *see Zapata-Lara*, 615 F.3d at 390, and that Nelson Resendez "knowingly possessed the weapon," *see Aguilera-Zapata*, 901 F.2d at 1215. Moreover, the PSR indicates that Requejo had helped his co-conspirators load 967 kilograms of marijuana into the tractor-trailer. These facts are sufficient to support the district court's imposition of the enhancement based on a finding of foreseeability under our precedent. *See, e.g.*, *United States v. Mergerson*, 4 F.3d 337, 350 (5th Cir. 1994) ("Ordinarily, one co-conspirator's use of a firearm will be foreseeable because firearms are 'tools of the trade' in drug conspiracies."); *see also Cisneros-Gutierrez*, 517 F.3d at 766; *United States v. Garza*, 118 F.3d 278, 285-86 (5th Cir. 1997); *United States v. Sparks*, 2 F.3d 574, 587 (5th Cir. 1993); *Aguilera-Zapata*, 901 F.2d at 1215.[1]

For the foregoing reasons, we conclude that the district court's application of the two-level enhancement was not clear error. We therefore AFFIRM the sentence.

---

[1] Requejo separately contends that the district court erred by relying in part on statements by a government attorney at sentencing, which included assertions not reflected in the PSR. The government attorney asserted that Requejo and the others in the Lincoln initially believed that they were being followed by thieves, rather than law enforcement, and had alerted Nelson Resendez to rendezvous with them so as to have the handgun available in any altercation with the supposed thieves. The basis, if any, for these assertions is unclear. "This Court has previously held that the unsworn assertions of the Government's attorney do not provide, by themselves, a sufficiently reliable basis on which to sentence the defendant." *United States v. Patterson*, 962 F.2d 409, 415 (5th Cir. 1992) (citing *United States v. Johnson*, 823 F.2d 840, 842 (5th Cir. 1987)). Because Requejo did not object to the government's statements or the district court's partial reliance upon them, he must show a plain error "that affected his substantial rights." *United States v. Garcia-Gonzalez*, 714 F.3d 306, 315 (5th Cir. 2013). Significantly, the district court did not base its application of the enhancement on the attorney's assertions "by themselves." *Patterson*, 962 F.2d at 415; *see United States v. Calverley*, 11 F.3d 505, 515 (5th Cir. 1993) ("[*Patterson*] does not hold that the district court may not consider the unsworn statements of the prosecutor. *Patterson* merely holds that such statements, when they are the only evidence supporting the district court's finding, are inadequate to support that finding." (citing *Patterson*, 962 F.2d at 415; *Johnson*, 823 F.2d at 842)). Rather, the district court adopted and relied upon the still-undisputed findings in the PSR, specifically citing the large quantity of marijuana at issue and this Court's statements that firearms often are foreseeable tools of the trade in such large-scale trafficking operations. Therefore, Requejo has failed to demonstrate plain error in connection with the government attorney's statements.