# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10146

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JAMES HOWARD KING,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

December 4, 2014

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, CLEMENT, and HIGGINSON, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Defendant-appellant James Howard King ("King") appeals the two-level enhancement to his offense level under U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) ("§ 2D1.1(b)(1)") for possession of a firearm, arguing that the enhancement is not supported by the record. He also argues that the district court failed to resolve his objections to the § 2D1.1(b)(1) enhancement, which is required by the Due Process Clause of the Constitution and Federal Rule of Criminal Procedure 32(i)(3)(B) ("Rule 32(i)(3)(B)"). Finally, King appeals the district court's failure to apply the so-called "safety valve" provided by 18 U.S.C. § 3553(f), which, if applied, would remove the mandatory minimum sentence for his offense of conviction. He argues that the district court's failure

No. 14-10146

to apply the safety valve presents a constitutional problem under *Alleyne v. United States*, 133 S. Ct. 2151 (2013) because a judge rather than a jury found the fact that precluded its application (possession of a firearm in connection with the offense).  We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

King pleaded guilty (without a plea agreement) to one count of conspiracy to possess with intent to distribute a controlled substance, namely, 100 grams or more of a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 846, § 841(a)(1), and § 841(b)(1)(B).  The one-count indictment specified that the conspiracy began in or before January of 2012 and continued until on or about February 11, 2013.  He and his attorney also signed a factual resume in connection with his guilty plea.  It provided that King acted as a courier on behalf of Darron Copeland in early 2012, picking up heroin from Dallas, Texas.  The factual resume stated that, later in 2012, Copeland replaced King and others with another courier because of interference by law enforcement.  The factual resume also noted that King was arrested in Fort Worth on July 3, 2012, with approximately 11 ounces of heroin that he had received from a Dallas-based supplier and intended to deliver to Copeland.  As in the indictment, the factual resume stated that the conspiracy between King, Copeland, and others lasted from January 2012 until on or about February 11, 2013.

King was arrested a second time on February 12, 2013, at a residence on Fairlane Avenue in Fort Worth.  After King pleaded guilty, a Presentence Investigation Report ("PSR") was composed by a probation officer in preparation for King's sentencing.  According to the PSR:

> The information in [the Offense Conduct section of the PSR] was obtained during an independent investigation of the offense and relevant conduct by this probation officer.  The information was gleaned from the Criminal Complaints, charging documents, and

2

No. 14-10146

Factual Résumés filed in this case, as well as investigative material prepared and compiled by [Drug Enforcement Administration ("DEA")] agents and [Task Force Officers ("TFOs")] and police officers employed by city police departments. In addition, interviews with DEA TFO Derrick Lopez, DEA TFO Kent Fluitt, and DEA TFO Steve Groppi were conducted, and they clarified and corroborated the information contained in the investigative reports. All of the information contained herein is based on evidence considered to be reliable by this probation officer.

According to the PSR's Offense Conduct section, law enforcement seized numerous items during the search of the Fairlane Avenue residence after King's arrest on February 12, 2013. From the master bedroom, they seized a "loaded and chambered High Point, .45-caliber, semiautomatic handgun" with an "obliterated" serial number, "one empty box of .45-caliber ammunition," and a "plastic baggie containing numerous clear, empty capsules." Also in the master bedroom, law enforcement observed "a television monitor" that "displayed the camera view of four separate cameras mounted on the exterior of the home." From a shelf in the laundry room, law enforcement seized 13 capsules stored in a cigarette box that contained between 0.05 and 1 gram of heroin each. Finally, from the floor next to the backdoor, they seized a plastic grocery bag with numerous pieces of drug paraphernalia, including "baggies, capsules, [an] electric grinder, two electronic scales, [a] kitchen strainer, and empty 'cut' bottles."

The PSR also stated that Copeland stopped using King as a courier after King's first arrest on July 3, 2012. The PSR provided that, thereafter, King continued his involvement in possessing and distributing heroin, "apart from coconspirators." According to the PSR, upon his second arrest on February 12, 2013, he "admitted he was involved in the distribution of drugs" but said that he "did not have any narcotics or drug paraphernalia at his residence."

No. 14-10146

Based on the discovery of the handgun during the search of King's residence, the PSR recommended a two-level enhancement to his offense level, based on § 2D1.1(b)(1). King objected to this enhancement, arguing that the residence where he was arrested was his wife's, not his own, that "[t]he weapon was found in a drawer of his wife's nightstand in the master bedroom and was not in open view," and that there was no indication that King knew the weapon was there. King also argued that the heroin and drug paraphernalia at his wife's residence were for his personal use rather than for distribution and that the PSR indicated that he ceased his involvement in the criminal conspiracy on July 3, 2012. Consequently, King argued that he qualified for the "safety valve" because he did not possess a firearm in connection with his offense. As evidence supporting these objections, King attached his July 3, 2012 arrest report, which listed an address for him that was not on Fairlane Avenue, and a printout of a webpage about heroin addiction, which says that heroin users often possess paraphernalia such as "[s]yringes, small plastic bags, coffee grinders and scales."

An Addendum to the PSR ("PSR Addendum") responded to King's objections. It again asserted that King lived at the Fairlane Avenue address, given that he was arrested at that residence and told the probation officer he had lived there for four years. The PSR Addendum also concluded that the handgun's proximity to the drug paraphernalia made it probable that the gun "had a protective function in the context of the defendant's drug-dealing activities." Finally, the PSR Addendum concluded that the presence of the heroin and paraphernalia at King's residence demonstrated that he had continued the "same course of conduct to possess with intent to distribute heroin" until the date of his second arrest.

King filed a response to the PSR Addendum. He stopped arguing that he did not reside at the Fairlane Avenue address. But he continued to argue

4

No. 14-10146

that his involvement in the drug conspiracy ended on July 3, 2012, and that the drugs and paraphernalia found at his residence were related only to his personal drug use.  He argued that any possession of a firearm months after he stopped participating in the conspiracy was not connected to his offense of conviction.  He also argued that the district court's application of a firearm enhancement would subject him to a mandatory minimum sentence by making the safety valve unavailable, which would violate *Alleyne.*

At sentencing, after giving the Government and King the opportunity to present further evidence and objections, the district court overruled King's objections for the reasons set out in the PSR Addendum.  Accordingly, the district court imposed a two-level enhancement to his offense level based on possession of a firearm during the offense, and it did not apply the safety valve. It calculated King's Sentencing Guidelines imprisonment range as 60 to 71 months, and ultimately sentenced him to 60 months of imprisonment, the mandatory minimum sentence.

## STANDARD OF REVIEW

"The district court's determination that § 2D1.1(b)(1) applies is a factual finding reviewed for clear error." *United States v. Ruiz*, 621 F.3d 390, 396 (5th Cir. 2010) (per curiam).  "A factual finding is not clearly erroneous if it is plausible, considering the record as a whole." *Id.*  Moreover, "a district court is permitted to draw reasonable inferences from the facts, and these inferences are fact-findings reviewed for clear error as well." *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006).

Citing *United States v. Zapata-Lara*, 615 F.3d 388 (5th Cir. 2010), King argues that we should apply de novo rather than clear error review.  In *Zapata-Lara*, we held that de novo review applied because the defendant's argument did "not concern the specifics of the factfinding, but, rather, whether the facts found [were] legally sufficient to support the enhancement." *Id.* at 390.  But

5

that case involved a peculiar situation where the district court did not make any finding at all about whether the defendant personally possessed the firearm or a coconspirator foreseeably possessed it. *See id.* at 390-91 ("We cannot be sure what rationale the court had in mind to support the enhancement . . . ."). In contrast, here, it is completely clear that the district court applied the enhancement based on King's personal possession of the firearm, rather than a coconspirator's possession of it. Further, both before and after we decided *Zapata-Lara*, we have applied clear-error review when reviewing the factual basis for a § 2D1.1(b)(1) enhancement. *E.g.*, *United States v. Cooper*, 274 F.3d 230, 245 (5th Cir. 2001) (decided before *Zapata-Lara*); *Ruiz*, 621 F.3d at 396 (decided after *Zapata-Lara*). Given the long line of precedent applying clear-error review to § 2D1.1(b)(1) enhancements and the easily distinguishable situation in *Zapata-Lara*, we find that clear-error review applies here.

King properly preserved his *Alleyne* challenge by raising it in his objections to the PSR Addendum. Thus, we review de novo King's challenge to the constitutionality of his sentence. *United States v. Doggett*, 230 F.3d 160, 165 (5th Cir. 2000).

## DISCUSSION

King challenges the district court's failure to resolve his objections, the application of the § 2D1.1(b)(1) enhancement, and the constitutionality of denying the safety valve based on a judicially-determined fact. All of these challenges fail.

## I.

Rule 32(i)(3)(B) provides that, at sentencing, a district court must rule on any objection to the PSR or "determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." A district court may fulfill this obligation

No. 14-10146

by adopting the PSR. *E.g.*, *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999). Here, the district court stated that it was overruling King's objections for the reasons stated in the PSR Addendum. Accordingly, the district court fulfilled its Rule 32(i)(3)(B) obligation to rule on all objections, as well as any obligation to do so under the Due Process Clause.

## II.

U.S.S.G. § 2D1.1(b)(1) provides that a two-offense-level enhancement should be applied to a defendant convicted of conspiracy to possess with intent to distribute a controlled substance "[i]f a dangerous weapon (including a firearm) was possessed." For the enhancement to apply, the Government must first prove by a preponderance of the evidence that the defendant possessed the firearm. The Government may do so by showing "that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." *Ruiz*, 621 F.3d at 396 (internal quotation marks omitted). "[T]he Government must show that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred." *United States v. Salado*, 339 F.3d 285, 294 (5th Cir. 2003). Once the Government has met its burden, the defendant can only avoid the enhancement by showing that "it was clearly improbable that the weapon was connected with the offense." *Ruiz*, 621 F.3d at 396.

At the outset, we find that the PSR and PSR Addendum contained sufficient indicia of reliability to allow the district court to rely on them at sentencing. *See United States v. Ollison*, 555 F.3d 152, 164 (5th Cir. 2009) ("Generally, a PSR bears sufficient indicia of reliability to permit the sentencing court to rely on it at sentencing." (internal quotation mark omitted)). Here, the PSR carefully laid out the items found during the search of the Fairlane Avenue residence after King was arrested there on February 12, 2013. Further, the probation officer cited several investigative methods

used in preparing the PSR, including reviewing court and investigative documents and interviewing three law enforcement officers who were involved in the case.   Because we find that the PSR contained sufficient indicia of reliability, it was King's burden to show that the PSR was inaccurate.  *Id.*

Here, considering the district court's proper reliance on the PSR and PSR Addendum, we find that there was no clear error in the district court's application of the § 2D1.1(b)(1) enhancement.   As to a temporal relation between the handgun, King, and the offense of conspiracy to possess with intent to distribute, the indictment to which King pleaded guilty recited that the conspiracy lasted from at least January of 2012 until on or about February 11, 2013, just one day before King was arrested and the handgun was found. The factual resume signed by King again repeated these dates of involvement in the conspiracy.   Further, the PSR provides that, at the time of his second arrest, King admitted to being involved in drug distribution.

King counters that the PSR and PSR Addendum at times imply that King ceased his involvement in the conspiracy around July 3, 2012.   He is correct that the PSR and PSR Addendum present some ambiguities about King's role in the conspiracy after July of 2012.   He is also correct that a DEA agent testified at King's detention hearing that he was unaware of King's involvement in the conspiracy after July of 2012.   Nonetheless, the indictment to which King pleaded guilty and the factual resume that he signed are obviously important pieces of the record.   Thus, considering the district court's conclusion that the § 2D1.1(b)(1) enhancement applied in light of the entire record, we find it plausible that the government proved by a preponderance of

the evidence that there was a temporal relation between the gun, King, and the offense of conspiracy.[1]

As to the spatial relation between the gun, King, and the offense of conspiracy, King was arrested in the Fairlane Avenue residence where the handgun, heroin, and drug paraphernalia were found.  After the PSR Addendum was filed, King dropped his argument that he did not reside at the Fairlane Avenue residence.  But he still maintains that the handgun could have been his wife's and that it was found in his wife's nightstand.  King presented no evidence on these matters, so the district court could disregard his unsworn assertions about them.  *See Huerta*, 182 F.3d at 364-65.

Here, law enforcement found a handgun with an obliterated serial number in the same room as a baggie with numerous empty clear capsules.  In the laundry room, they found 13 capsules of heroin.  And, next to the backdoor, they found a grocery bag with numerous pieces of drug paraphernalia.

Admittedly, we have held that "mere control or dominion over the place in which contraband or an illegal item is found *by itself* is not enough to establish constructive possession when there is joint occupancy of a place." *United States v. Mergerson*, 4 F.3d 337, 349 (5th Cir. 1993).  But, here, we find it plausible that the Government proved by a preponderance that the gun was King's, not just that he had mere control over his jointly-occupied residence. While King shared the residence with his wife, there is no indication that she

---

[1] A temporal link could also be proven if the gun was possessed close in time to "related relevant conduct," meaning conduct that is within a "common scheme or plan" of the offense of conviction. *United States v. Vital*, 68 F.3d 114, 118-20 (5th Cir. 1995).  At some points in the PSR, the probation officer relied on King's distribution of heroin by himself, rather than as part of the conspiracy.  The probation officer found that King's solo distribution activities were proven by the presence of heroin and drug paraphernalia at his residence.  While a finding of a temporal relation based on this related relevant conduct would not be clear error, we determine that it is unnecessary to temporally link the gun possession to mere relevant conduct because King pleaded guilty to a conspiracy that continued until February of 2013.

was involved in any drug activity. Accordingly, the district court could reasonably infer that the handgun *with an obliterated serial number* belonged to King, the participant in the drug distribution conspiracy. The fact that the gun was found in the same master bedroom as empty capsules and a television monitor with four different exterior camera feeds (and in the same house as heroin and other drug paraphernalia) also supports an inference that the handgun was part of King's plan for defending a location involved in a drug conspiracy.

King counters that, prior to sentencing, he submitted a page from a website saying that a heroin addict like himself might possess various pieces of drug paraphernalia to facilitate personal heroin use. Even assuming that this page from the website constituted viable rebuttal evidence, the page did not explain that a recreational heroin user would likely possess numerous empty clear capsules. He also did not explain the legitimate uses for a handgun with an obliterated serial number.

On the basis of the entire record, we find it plausible that the Government proved by a preponderance of the evidence that a spatial relation existed between the handgun, King, and the offense of conspiracy to possess with intent to distribute heroin. We also find it plausible that King did not carry his burden of showing that it was "clearly improbable" that the firearm was connected to his offense of conviction. Accordingly, we find no clear error in the district court's application of the § 2D1.1(b)(1) enhancement.

## III.

King finally contends that declining to apply the safety valve based on a judicially-determined fact is unconstitutional under *Alleyne*, 133 S. Ct. 2151.[2]

---

[2] Here, the safety valve was unavailable due to the judicially-determined fact that King possessed a firearm in connection with his offense. *See* 18 U.S.C. § 3553(f)(2) (stating that safety valve is available "if the court finds at sentencing, after the Government has been

*Alleyne* held that any fact that increases a statutory mandatory minimum sentence must be found by a jury beyond a reasonable doubt. *Id.* at 2160. In contrast, the safety valve statute provides that a defendant who qualifies for the safety valve shall be sentenced without regard to a statutory mandatory minimum sentence. 18 U.S.C. § 3553(f). That is, the safety valve does not increase the mandatory minimum; instead, it removes it. Accordingly, *Alleyne* is not directly applicable.

Moreover, *Alleyne* specifies that "the Sixth Amendment applies where a finding of fact both alters the legally prescribed range *and* does so in a way that aggravates the penalty." 133 S. Ct. at 2161 n.2. Indeed, throughout the opinion, *Alleyne* emphasizes the aggravating nature of increasing a mandatory minimum sentence. *Id.* at 2160-63. In contrast, the safety valve at issue here *mitigates* the penalty.

The application of *Alleyne* to the safety valve is an issue of first impression in this circuit, but the four other Courts of Appeals that have considered the issue have found that *Alleyne* does not preclude judicial factfinding for safety valve determinations. *See United States v. Lizarraga-Carrizales*, 757 F.3d 995, 997-99 (9th Cir. 2014); *United States v. Harakaly*, 734 F.3d 88, 97-99 (1st Cir. 2013); *United States v. Silva*, 566 F. App'x 804, 807-08 (11th Cir. 2014) (unpublished); *United States v. Juarez-Sanchez*, 558 F. App'x 840, 843 (10th Cir. 2014) (unpublished). We join our sister circuits and find that it is not constitutional error for a judge to find facts that render the safety valve inapplicable.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.

---

afforded the opportunity to make a recommendation, that . . . the defendant did not . . . possess a firearm or other dangerous weapon . . . in connection with the offense").