# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-11092

United States Court of Appeals
Fifth Circuit

**FILED**

March 9, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

JOSE MILTON PUENTES,

> Defendant - Appellant

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 4:15-CR-79-1

Before WIENER, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:*

Defendant Jose Milton Puentes challenges the district court's calculation of his sentence after pleading guilty to one count of distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).  We AFFIRM.

## I. Background

In March 2013, reliable confidential sources approached agents from the Fort Worth office of the Drug Enforcement Administration ("DEA") about

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-11092

Defendant Jose Milton Puentes's drug distribution activities. While in California, Puentes sold the confidential sources a shipment of methamphetamine. That shipment, which contained a total of 416.9 grams of methamphetamine, was received by DEA agents in Fort Worth, Texas in April 2013.

Under the direction of the DEA, the confidential sources continued meeting with Puentes in California throughout 2013. In May 2014, the confidential sources advised DEA agents that Puentes had provided them with 1.1 grams of methamphetamine (among other drugs) as samples of the drugs he had available for purchase.

DEA agents subsequently executed a search warrant at Puentes's California residence in June 2014. During the search, DEA agents seized 440 grams of methamphetamine from a detached storage shed. The agents also seized a .22-caliber pistol and multiple rounds of ammunition from Puentes's bedroom in the residence. Puentes was detained during the search and released afterwards, pending further investigation.

Puentes was subsequently named in a one-count indictment filed in the Northern District of Texas on April 15, 2015. The indictment charged Puentes with distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). According to the indictment, at the time he made the shipment to DEA agents in April 2013, Puentes knowingly and intentionally possessed with intent to distribute fifty grams or more of a mixture or substance containing methamphetamine, a Schedule II controlled substance.

Puentes was contacted by DEA agents in California in May 2015. He initially entered a plea of not guilty, but withdrew that plea shortly thereafter and entered a plea of guilty. Puentes's presentence investigation report ("PSR") determined that Puentes was accountable for a total of 858 grams of methamphetamine, which resulted in a base offense level of thirty-four. The

PSR then recommended four two-level enhancements. Relevant to Puentes's appeal, the PSR recommended an enhancement pursuant to United States Sentencing Guideline § 2D1.1(b)(1) because Puentes possessed a firearm. The resulting total offense level was forty-two, which, based on Puentes's criminal history category of I, resulted in a Guideline imprisonment range of 360 months to life. That range was then limited by the statutorily authorized maximum sentence of forty years to create a final Guideline range of 360 to 480 months. 21 U.S.C. § 841(b)(1)(B)

Puentes filed a series of objections to both the base offense level and the various enhancements. Among his arguments, Puentes disputed the connection between the firearm discovered during the June 2014 search and the April 2013 shipment of methamphetamine. Puentes further argued that the firearm was not connected with the discovery of methamphetamine during the June 2014 search as the drugs were in a separate building from the firearm, the firearm was not on Puentes's person, and the firearm was unloaded and stored.

At his sentencing hearing, Puentes argued that there was no proof that a firearm was present during the commission of the offense of conviction (the April 2013 shipment) and that there was no evidence that drug trafficking activity took place at the residence. Counsel for Puentes explained that the firearm was not in the same place as the methamphetamine. Overruling the objections, the district court found both that drug transactions occurred at the residence and that there was a presumption that the firearm was used to protect Puentes's drug activities.

The district court sentenced Puentes to 360 months of imprisonment and a four-year term of supervised release. Despite having overruled all of Puentes's objections, the district court noted that its sentence was "the sentence the Court would impose even if some of those objections had been

No. 15-11092

sustained because I would be guided by the factors the Court should consider under the statute, and that's the sentence I would impose under that guidance."   Puentes objected to the sentence as being procedurally and substantively unreasonable, and filed a timely notice of appeal.

## II. Standard of Review

A district court's determination that an enhancement based on § 2D1.1(b)(1) applies is a factual finding reviewed for clear error. *United States v. Romans*, 823 F.3d 299, 317 (5th Cir.), *cert. denied,* 137 S. Ct. 195 (2016). "A factual finding is not clearly erroneous if it is plausible, considering the record as a whole." *United States v. Ruiz*, 621 F.3d 390, 396 (5th Cir. 2010) (per curiam).   "[A] district court is permitted to draw reasonable inferences from the facts, and these inferences are fact-findings reviewed for clear error as well." *United States v. King*, 773 F.3d 48, 52 (5th Cir. 2014) (quoting *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006)).

## III. Discussion

U.S.S.G. § 2D1.1(b)(1) provides for a two-level enhancement to a defendant's offense level "[i]f a dangerous weapon (including a firearm) was possessed."  The Government has the burden "of showing by a preponderance of the evidence that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." *United States v. Salado*, 339 F.3d 285, 293–94 (5th Cir. 2003) (citing *United States v. Eastland*, 989 F.2d 760, 770 (5th Cir. 1993)).  To satisfy its burden under this standard, "the Government must show that the weapon was found in the same location where drugs . . . are stored or where part of the transaction occurred." *Id.* at 294.  If such a showing is made, the defendant can avoid enhancement by demonstrating that "it was clearly improbable that the weapon was connected with the offense." *Ruiz*, 621 F.3d at 396.

4

No. 15-11092

On appeal, Puentes argues that the district court committed error by imposing the two-level firearm enhancement because the Government failed to establish any temporal or spatial connection with either the methamphetamine shipment or the discovery of methamphetamine at his residence.  His arguments, however, do not demonstrate that the district court clearly erred in assigning the two-level enhancement.  Puentes relies on our decision in *United States v. Vasquez*, 874 F.2d 250 (5th Cir. 1989), to argue that the Government failed to demonstrate a spatial connection between his offense and the firearm.  That case in inapposite.  The defendant in *Vasquez* was convicted of *possession* of a controlled substance, not *distribution* of a controlled substance.  *Vasquez*, 874 F.2d at 250.  Puentes was charged with distribution of methamphetamine.  Puentes's distribution scheme was ongoing according to the factual findings of the PSR, which were expressly adopted by the district court and are not challenged by Puentes on appeal.  *See United States v. Zuniga*, 720 F.3d 587, 590–91 (5th Cir. 2013) (per curiam) ("Generally, a PSR bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." (quoting *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012))).  The district court's statement at the sentencing hearing that some of the purposes of Puentes's residence were to store and sell drugs is similarly unchallenged.  This makes the situation in *Vasquez*, where a firearm was discovered several miles away from where the defendant committed the possession offense, materially different from Puentes's situation, in which the firearm was found in one location on a property involved in his distribution offense.  *Vasquez*, 874 F.2d at 251; *see also United States v. Juluke*, 426 F.3d 323, 326, 328–29 (5th Cir. 2005) (per curiam) (upholding § 2D1.1(b)(1) enhancement where weapons were found in home with a quantity of cash but drugs were found in vehicle in driveway); *United States v. Navarro*, 169 F.3d 228, 230, 235 (5th Cir. 1999) (upholding

§ 2D1.1(b)(1) enhancement where guns were found in house and drugs were buried in yard).

The district court's unchallenged determination that Puentes was involved in an ongoing distribution scheme similarly undercuts any argument disputing temporal proximity. Under our precedent, possession of a dangerous weapon in connection with relevant conduct can support the application of the enhancement. *See Eastland*, 989 F.2d at 769. The PSR notes that Puentes met in May 2014 with the confidential sources to discuss future sales of drugs. This conduct, along with the district court's finding of an ongoing distribution scheme, demonstrates that Puentes's distribution of methamphetamine occurred up to the time the firearm was seized. That is sufficient to demonstrate temporal proximity.

The district court did not clearly err in determining that the firearm was related to the charging offense. As the district court recognized, Puentes offered no evidence that "it was clearly improbable that the weapon was connected with the offense." *King*, 773 F.3d at 53 (quoting *Ruiz*, 621 F.3d at 396). We therefore AFFIRM.