# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 26, 2025

Lyle W. Cayce
Clerk

No. 24-50641
Summary Calendar

———————————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

EDUARDO OCHOA FELIX,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:24-CR-13-2

_____

Before BARKSDALE, STEWART, and RAMIREZ, *Circuit Judges*.

PER CURIAM:*

Eduardo Ochoa Felix challenges his within-Guidelines 87-months'
sentence, imposed following his guilty-plea conviction for possession with
intent to distribute a mixture or substance containing a detectable amount of
cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and conspiracy
to do the same, in violation of §§ 841(a)(1), (b)(1)(C), and 846. Consistent

_____

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

with his objection in district court to the presentence investigation report (PSR), Felix contends the record does not support application of a two-level adjustment pursuant to Sentencing Guideline § 2D1.1(b)(1) (described *infra*), including that the court did not make sufficient findings. His claim lacks merit.

Although post-*Booker*, the Guidelines are advisory only, the district court must avoid significant procedural error, such as improperly calculating the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 46, 51 (2007). If no such procedural error exists, a properly preserved objection to an ultimate sentence is reviewed for substantive reasonableness under an abuse-of-discretion standard. *Id.* at 51; *United States v. Delgado-Martinez*, 564 F.3d 750, 751–53 (5th Cir. 2009). In that respect, for issues preserved in district court, its application of the Guidelines is reviewed *de novo*; its factual findings, only for clear error. *E.g.*, *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

The Guidelines provide for a two-level increase to defendant's base offense level "[i]f a dangerous weapon (including a firearm) was possessed". U.S.S.G. § 2D1.1(b)(1). The district court's determination that Felix possessed a firearm in connection with the offense is a factual finding, reviewed for clear error. *E.g.*, *United States v. Ruiz*, 621 F.3d 390, 396 (5th Cir. 2010). "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *United States v. Trujillo*, 502 F.3d 353, 356 (5th Cir. 2007).

Where, as here, the Government seeks to establish for sentencing purposes that defendant personally possessed the weapon, the Government must "prov[e] by a preponderance of the evidence that the defendant possessed the weapon"; it can do so "by showing that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the

defendant". *Ruiz*, 621 F.3d at 396 (citation omitted). Defendant then bears the burden "to show that it was clearly improbable that the weapon was connected with the offense". *Id.*; *see also* U.S.S.G. § 2D1.1, cmt. n.11(A) (setting forth "clearly improbable" standard for possession of weapon in connection with drug-trafficking offense).

In support of his contention that the record does not support the § 2D1.1(b)(1) adjustment, Felix maintains the record does not show whether the court found: that Felix personally possessed the firearm; or, in the alternative, that his coconspirator knowingly possessed the firearm and Felix could have reasonably foreseen that possession. Contrary to Felix's assertion, however, the record is not uncertain regarding the court's rationale for applying the adjustment.

Following, *inter alia*, testimony by an officer at the scene of the arrest consistent with, *inter alia*, the PSR, the court decided the adjustment was warranted because there was a drug deal, Felix participated, and a firearm was readily available to him for the duration of the deal. The court expressly decided the Government had proven a temporal and spatial relationship between the firearm, the drug-trafficking activity, and Felix. Accordingly, the court clearly relied upon the theory that Felix personally possessed the firearm. *See United States v. Zapata-Lara*, 615 F.3d 388, 390 (5th Cir. 2010).

In short, the record supports the court's application of the adjustment based upon this theory. *See, e.g.*, *United States v. Guidry*, 960 F.3d 676, 683 & n.7 (5th Cir. 2020) (affirming adjustment where firearm was inside vehicle with drugs in its trunk and was within reach of vehicle's occupants); *United States v. Farias*, 469 F.3d 393, 399–400 (5th Cir. 2006) (affirming adjustment where drugs were in trunk of vehicle occupied by multiple passengers and firearm was underneath defendant's seat); *United States v. Flucas*, 99 F.3d 177, 179 (5th Cir. 1996) (affirming adjustment where firearm and drugs were

located beneath passenger seat in vehicle with multiple occupants). In applying the adjustment, the court noted that, during the drug deal, Felix could readily access the firearm inside the vehicle with him (under his front seat (as a passenger) in the vehicle). Felix failed to "carry his reciprocal burden" of showing that any connection between the firearm and the offense was clearly improbable. *Guidry*, 960 F.3d at 683.

Finally, although Felix maintains there was insufficient evidence to establish that he knew about the firearm, our court does not require that the Government show defendant knew of the firearm's existence. *See Farias*, 469 F.3d at 400 n.20; *Flucas*, 99 F.3d at 179. Rather, the adjustment applies if a weapon was present, and it is not clearly improbable that it was connected to the crime; that burden may be satisfied by establishing the necessary spatial-temporal relationship. *See Flucas*, 99 F.3d at 179. Although defendant's lack of knowledge may support that it was clearly improbable that the weapon was connected to his conduct, *see id.*, the district court made no such determination in this case; instead, the court decided Felix was responsible for protecting the drugs and remaining close to the readily-accessible firearm in case "anything went down".

AFFIRMED.