# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-41289

United States Court of Appeals
Fifth Circuit

**FILED**

October 30, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ADRIAN RODRIGUEZ-GUERRERO,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, SMITH, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Adrian Rodriguez-Guerrero pled guilty to conspiracy to possess with intent to distribute 100 kilograms or more of marijuana. He argues that the district court erred during sentencing by applying a two-level enhancement for possession of a firearm. We AFFIRM.

## BACKGROUND

On September 5, 2012, McAllen, Texas police investigators were conducting surveillance of a ranch north of the city that was suspected of being a staging point for narcotics trafficking. The officers observed Rodriguez-Guerrero as he arrived and then left the ranch with another defendant, Jose

No. 14-41289

de Jesus Gallo-Reyes. Officers followed them to a residence in McAllen. The two men later left the residence in a truck to return to the ranch. That truck was followed closely by a van driven by co-defendants Mariano Rodriguez and Juan Rodriguez. The vehicles appeared weighed down.

The officers stopped both vehicles. A canine alerted to the presence of narcotics in the van. A search of the van discovered boxes of limes with bundles of marijuana concealed among the limes. The suspects consented to a search of the residence in McAllen. There, officers found articles of clothing in two of the bedrooms, a loaded shotgun and 125 shotgun shells in the master bedroom, and two bundles of marijuana in the master bathroom shower. In a room connected to the garage, the officers found plastic cellophane, limes, packing tape, white and green fresh lime boxes, latex gloves, a large scale, and several bundles of marijuana. Wrapping material with marijuana residue was in the garage. All of the seized bundles of marijuana were wrapped with a combination of plastic cellophane and packing tape.

The owners of the residence were not charged in the case. There was no information as to who owned the clothing in the residence. In his written statement accepting responsibility, Rodriguez-Guerrero stated that he was hired to perform landscaping services at the McAllen residence. He later was asked to load the marijuana into a truck at the residence. Rodriguez-Guerrero acknowledged that the residence was a "stash house."

Rodriguez-Guerrero pled guilty to conspiracy to possess with intent to distribute 100 kilograms or more of marijuana. His total offense level of 27 and criminal history category of III yielded a guidelines-range sentence of 87 to 108 months. Included in the calculation was a two-level enhancement for possession of a dangerous weapon, namely, the shotgun found in the master bedroom of the McAllen residence.

No. 14-41289

Rodriguez-Guerrero objected to the enhancement on the ground that there was no evidence that he controlled the shotgun or the house where the shotgun was found. He also denied knowing that the shotgun was present in the house. There was no evidence that he or his co-conspirators owned, leased, or resided at the house or had entered the master bedroom. There was also no evidence that he or any other conspirator had any connection to the shotgun or usually carried a weapon. The error was not harmless, he argues, because without the enhancement, his guideline range of imprisonment would have been 70 to 87 months.

The district court overruled the objection: "There was nothing else going on at that location other than the drug trafficking. And the weapon was there loaded and there were shells found in the same master bedroom." The court said it was not finding Rodriguez-Guerrero "actually" or "constructive[ly]" possessed the shotgun; rather, "it was reasonably foreseeable to [the defendant] that there would be a weapon involved in relationship to this drug trafficking crime. And based on the location, then, what was in that place, there's nothing to indicate that it was there for anything other than involving the drug trafficking." Further, the shotgun was "a tool of the trade and it's reasonably foreseeable to him that there would have been a weapon, especially a person with the experience that he has in drug trafficking."

The district court sentenced Rodriguez-Guerrero to 104 months of imprisonment and four years of supervised release. He timely appealed.

DISCUSSION

Rodriguez-Guerrero contends that the district court erred by applying the two-level enhancement for possession of the shotgun under United States Sentencing Guidelines Manual Section 2D1.1(b)(1) because there was no evidence to support a finding that either he or a coconspirator possessed the

shotgun.  We review *de novo* any legal questions regarding the applicability of Section 2D1.1(b)(1).  *United States v. Zapata-Lara*, 615 F.3d 388, 390 (5th Cir. 2010).  We review the district court's factual findings for clear error.  *United States v. King*, 773 F.3d 48, 52 (5th Cir. 2014).

Section 2D1.1(b)(1) provides a two-level enhancement of a defendant's offense level "[i]f a dangerous weapon (including a firearm) was possessed." The enhancement applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."   U.S.S.G. § 2D1.1(b)(1), cmt. n.11(A).  "[T]he government must prove weapon possession by a preponderance of the evidence."  *Zapata-Lara*, 615 F.3d at 390.  If the government satisfies this burden, then the burden shifts and the defendant must show that it is clearly improbable that the weapon was connected to the offense.  *Id.* at 391 n.5.

The government can prove that the defendant personally possessed the weapon "by showing a temporal and spatial relationship of the weapon, the drug trafficking activity, and the defendant."  *Id.* at 390.  "Alternatively, when another individual involved in the commission of an offense possessed the weapon, the government must show that the defendant could have reasonably foreseen that possession."   *Id.* (quotation marks omitted).   A defendant involved in a "jointly undertaken criminal activity" is responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity."  U.S.S.G. § 1B1.3(a)(1)(B).  "Thus, a sentencing court may often infer foreseeability from a coconspirator's knowing possession of a weapon."  *Zapata-Lara*, 615 F.3d at 390 (citation and quotation marks omitted).

In this case, the district court applied the enhancement on the basis that Rodriguez-Guerrero must have reasonably foreseen that another conspirator would knowingly possess a firearm.  The district court did not connect the

shotgun to any particular conspirator, nor does the record provide such evidence. Rodriguez-Guerrero's primary argument is that the failure to link the shotgun to a specific conspirator precludes the application of the sentencing enhancement. For this proposition, Rodriguez-Guerrero relies almost exclusively on our decision in *Zapata-Lara*.

In *Zapata-Lara*, the defendant brokered a drug deal that took place in the driveway of the seller's residence, which was owned by his mother. *Id*. at 389 & n.1. Law enforcement officers later found a loaded handgun in the garage inside a small refrigerator that was 15 feet from where the drug deal took place. *Id*. The district court applied the Section 2D1.1(b)(1) enhancement on the grounds that a gun is a "tool of the trade" and it was "clearly established by precedent" that "a gun would be present" at a drug deal. *Id*.

We interpreted the district court's explanation to "suggest a finding of foreseeability . . . but the court never connected the handgun to any particular co-participant." *Id*. at 390. We stated that the relatively short distance between the transaction and the weapon might support "spatial connection," but the fact that the weapon was not discovered until a subsequent search made the "temporal connection" uncertain. *Id*. at 391. We remanded so that the district court could sentence the defendant again and articulate a rationale with supporting findings should the same enhancement be applied. *Id*.

Unlike *Zapata-Lara*, the district court here made detailed findings explaining the necessary connections. We conclude that the facts identified by the court plausibly establish a temporal and spatial relationship between the weapon, the drug trafficking activity, and Rodriguez-Guerrero or a coconspirator. When a district court's factual findings are plausible in light of the record as a whole, they will be upheld. *King*, 773 F.3d at 52.

First, it is undisputed that the house where the shotgun was found was a stash house used to package and transport bundles of marijuana. It was a

drug warehouse, not someone's residence in which drugs were also stored. Second, bundles of marijuana were found in the master bedroom bathroom, making it plausible to find that either Rodriguez-Guerrero or another conspirator accessed the master bedroom where the shotgun was found. Third, the amount of ammunition suggests that the weapon belonged to the defendant or his coconspirators in connection with the drug trade. Fourth, the shotgun was found on the same day that law enforcement observed Rodriguez-Guerrero and his coconspirators at the house.

Though nothing in the record links the shotgun to any particular conspirator, the evidence makes it plausible that a "weapon was present" and that one of the conspirators possessed it. U.S.S.G. § 2D1.1(b)(1), cmt. n.11(A). Because the only purpose of the house was for drugs, it was plausible to find that the only purpose of the weapon was to support the drug business. The possession of the weapon to further the drug conspiracy may be clear without there also being clarity as to which conspirator possessed it.

The sentencing enhancement reflects the "increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1(b)(1), cmt. n.11(A). The mere fact that a weapon cannot be attributed to any specific drug trafficker does not decrease the danger of violence. There was enough evidence to support that the weapon must have been possessed by one of the conspirators in furtherance of the conspiracy. That is sufficient.

AFFIRMED.