# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-51034
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
December 17, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JOSEPH RAY SHARP, also known as Joseph Sharp,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:18-CR-167-2

Before CLEMENT, ELROD, and OLDHAM, Circuit Judges.

PER CURIAM:*

Joseph Ray Sharp appeals the 121-month sentence imposed by the district court after his jury conviction for conspiracy to possess with intent to distribute five or more grams of actual methamphetamine and maintaining a drug involved premises. He argues that (1) the district court clearly erred in determining the drug quantity attributable to him under U.S.S.G. § 2D1.1; and (2) the district court clearly erred in increasing his offense level by two points

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

under § 2D1.1(b)(1) based on its finding that a dangerous weapon was possessed.

Because Sharp raised these issues in the district court, we review the district court's application of the Guidelines de novo and its factual findings for clear error. *See United States v. Gomez-Alvarez*, 781 F.3d 787, 791 (5th Cir. 2015). The district court's findings concerning the drug quantity and whether a dangerous weapon was possessed are factual findings reviewed for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764-65 (5th Cir. 2008). A factual determination is not clearly erroneous if it is plausible in view of the record as a whole. *United States v. Zamora-Salazar*, 860 F.3d 826, 836 (5th Cir.), *cert. denied*, 138 S. Ct. 413 (2017).

The trial evidence and the information in the presentence report (PSR) established officers conducted surveillance of a residence in Odessa, Texas, and discovered that Troy and Jimmy Martinez were selling methamphetamine at the residence and that Sharp was renting the residence. When officers obtained and executed a search warrant, they found 9.27 grams of methamphetamine in an open box in one bedroom occupied by Sharp and 33.8 grams of methamphetamine in the bathroom shower next to the other bedroom occupied by his codefendants. All of the methamphetamine was individually packaged for distribution. On the codefendants' bed, officers found a loaded firearm. They also found a bulletproof vest and a large duffle bag containing 228.4 grams of marijuana, glass pipes, digital scales, glass water bongs, small plastic baggies, and a box of ammunition in the closet of that bedroom. In the kitchen area, they found drug paraphernalia in plain view. After receiving a *Miranda*[1] warning, Sharp admitted in a recorded interview that he was aware of the drug trafficking going on in the residence and referred to his house as a

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

"trap house" where individuals go to purchase and use narcotics; he did not charge Jimmy and Troy Martinez any rent; and he received quantities of methamphetamine from Jimmy and Troy Martinez that could have been provided in exchange for rent. In view of this evidence, it was reasonably foreseeable to Sharp that his codefendants would possess additional quantities of methamphetamine. *See United States v. Hinojosa*, 749 F.3d 407, 415 (5th Cir. 2014). The district court's finding that Sharp was responsible for 43.07 grams of methamphetamine was not clearly erroneous because it was plausible in view of the record as a whole. *See Zamora-Salazar*, 860 F.3d at 836.

The district court did not err in imposing a two-level enhancement under § 2D1.1(b)(1) based on its finding that a dangerous weapon was possessed. The trial evidence and the information in the PSR established that Sharp was aware of the drug trafficking that occurred at his residence, he allowed Troy and Jimmy Martinez to stay at the residence, and he accepted methamphetamine from them. Sharp must have been aware of the methamphetamine and drug paraphernalia found in plain view in the open box in his bedroom and the drug paraphernalia found in plain view in the kitchen area. The fact that he may not have known about the firearm or exercised possession over it is immaterial. *See United States v. Rodriguez-Guerrero*, 805 F.3d 192, 196 (5th Cir. 2015); *United States v. Garza*, 118 F.3d 278, 285-86 (5th Cir. 1997). In view of this evidence, it was reasonably foreseeable to Sharp that a coconspirator would possess a firearm during the commission of the conspiracy offense. *See Cisneros-Gutierrez*, 517 F.3d at 766; *United States v. Aguilera-Zapata*, 901 F.2d 1209, 1215-16 (5th Cir. 1990). The district court's finding that the offense involved possession of a dangerous weapon was not clearly erroneous because it was plausible in view of the record as a whole. *See Rodriguez-Guerrero*, 805 F.3d at 196; *Cisneros-Gutierrez*, 517 F.3d at 764-65.

No. 18-51034

At the sentencing hearing, the district court imposed a three-year term of supervised release for maintaining a drug involved premises, which is the statutory maximum supervised release term for that offense. Because the written judgment incorrectly states that the district court imposed a five-year term of supervised release for that offense, we modify the judgment and affirm as modified.

AFFIRMED AS MODIFIED.