# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 28, 2021

Lyle W. Cayce
Clerk

No. 20-10495

United States of America,

*Plaintiff—Appellee*,

*versus*

Phillip Matthew Sincleair,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-CR-354-2

---

Before Davis, Haynes, and Oldham, *Circuit Judges*.

W. Eugene Davis, *Circuit Judge*:

Phillip Sincleair appeals the application of a two-point firearm sentencing enhancement to his offense level under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon. Because it is not clear whether the district court determined that Sincleair personally possessed the firearm or that one of Sincleair's "unindicted co-conspirators" possessed it during the commission of an offense, we VACATE the sentence and REMAND for resentencing.

No. 20-10495

## I.     BACKGROUND

Phillip Sincleair pleaded guilty, without a plea agreement, to conspiring to possess a controlled substance with intent to distribute. As part of his plea proceedings, Sincleair signed a factual resume stipulating that, in 2017, he conspired with Jade Kuhn and Craig Wilbur to possess methamphetamine with intent to distribute it. A drug trafficking investigation of Kuhn, Wilbur, Cameron Primm, and Estevan Graciano revealed that Kuhn and Primm[1] supplied methamphetamine to Sincleair, who then distributed it to others.

On May 18, 2017, Cooke County Sherriff's Office (CCSO) police officers executed a search warrant at a residence owned by Chase Wood. At the residence, the officers found Sincleair, Wood, Mark Ilczyszyn, and Mahalia Markezinis, whom the presentence report (PSR) refers to as "unindicted co[-]conspirators," and Amanda Blackman (Sincleair's girlfriend), sitting on a couch smoking methamphetamine. The officers discovered less than two ounces (51.4 grams) of methamphetamine in Wood's residence, although it is unclear where in the home they found the drugs. They also found a firearm on a table near the couch but did not determine who owned it.

According to the PSR, the CCSO's investigation revealed that "Sincleair was the methamphetamine [source of supply] for Ilczyszyn, who was the [source of supply] for Wood." The PSR also stated that Sincleair,

---

[1] None of these individuals were with Sincleair when he was arrested and the weapon at issue was present.

No. 20-10495

Ilczyszyn, and Blackman met at Wood's residence on May 18, 2017 "so Ilczyszyn could distribute one ounce of methamphetamine to Wood."[2]

On December 9, 2019, Sincleair was charged by information for one count of conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846 (21 U.S.C. §§ 841(a)(1) and (b)(1)(C)), to which he pleaded guilty.[3] The probation office prepared a PSR, which held Sincleair accountable for conspiring with Kuhn and Wilbur to possess with intent to distribute 26,166.3 kilograms of methamphetamine and gamma hydroxybutyric acid (GHB) between September 2016 and June 2017. Sincleair was not held accountable for the 51.4 grams of methamphetamine seized on May 18, 2017 from Wood's residence, where the weapon at issue was present, because it could have been "double counting the methamphetamine he received from Kuhn." The PSR calculated Sincleair's total offense level at 35, which included a two-level firearm possession enhancement under U.S.S.G. § 2D1.1(b)(1). The PSR explained that the firearm enhancement was applied because the May 18, 2017 search occurred in a residence where a drug transaction was in progress, Sincleair was present, and a firearm was also present. Based on Sincleair's total offense level of 35 and Category V criminal history, his advisory guidelines imprisonment range would typically be 262 to 327 months; however, the

---

[2] Sincleair, Ilczyszyn, Wood, and Blackman were arrested and charged with the state offense of Engaging in Organized Criminal Activity-Manufacture/Delivery of a Controlled Substance. After pleading guilty, Sincleair was sentenced to 25 years of imprisonment for the state offense on April 29, 2019. Although mentioned in the PSR, this state conviction was not used to calculate Sincleair's criminal history. It was also not used in the PSR or the PSR addendum to support application of the § 2D1.1(b)(1) enhancement.

[3] Neither the information charging Sincleair nor the factual resume that Sincleair signed referred to the incident giving rise to the enhancement at issue in this case.

No. 20-10495

statutory maximum sentence was 240 months, which is what the PSR listed as the guideline term of imprisonment.

Sincleair filed written objections to the PSR, including an objection to the § 2D1.1(b)(1) firearm enhancement. He argued that the enhancement should be removed because his presence at Wood's house on May 18, 2017 was not related to the drug conspiracy to which he pleaded guilty because he and Blackman were at Wood's home to engage in drug use and not drug trafficking, the firearm was later confirmed to be owned by and registered to Wood, and it was "not foreseeable that a firearm would be needed in a social setting amongst two couples[4] involved in recreational drug use." The Government notably did not respond to Sincleair's firearm-enhancement objection in its response to Sincleair's objections to the PSR. Meanwhile, the probation officer issued a PSR addendum that, in part, responded to Sincleair's objection to the § 2D1.1(b)(1) enhancement. The addendum explained that the enhancement was appropriate because Sincleair was Ilczyszyn's source of supply and was present for the May 18, 2017 drug transaction between Ilczyszyn and Wood, so Sincleair was "accountable for the methamphetamine Ilczyszyn distributed." The addendum reasoned that "possessing firearms during the distribution of methamphetamine is reasonably foreseeable, and thus, is relevant conduct for [Sincleair]."

During the sentencing hearing on May 19, 2020, the district court sustained some of Sincleair's objections but overruled his objection to the § 2D1.1(b)(1) enhancement. The district court did not make specific fact findings, but instead, mostly adopted the probation officer's findings in the PSR, "subject to and including changes and qualifications made" in the PSR

---

[4] The PSR stated that Blackman was Sincleair's girlfriend, and Sincleair asserted that Markezinis was Ilczyszyn's girlfriend.

4

addendum. The district court calculated a new offense level of 33 based on the sustained objections, resulting in a guidelines imprisonment range of 210 to 262 months of imprisonment.[5] The district court sentenced Sincleair to 210 months of imprisonment, with 15 months deducted for the time he had already spent incarcerated. Sincleair timely filed a notice of appeal.

## II.    LEGAL STANDARD

This Court reviews the district court's "interpretation or application of the Sentencing Guidelines de novo and its factual findings for clear error."[6] Although both parties apply the clear error standard here, "[i]t is well-established that our court, not the parties, determines the appropriate standard of review."[7] In *United States v. Zapata-Lara*, we made clear that we review de novo the issue of whether the facts found are legally sufficient to support application of the two-level firearm enhancement under § 2D1.1(b)(1).[8] Because, as described below and like *Zapata-Lara*, "we cannot be sure what rationale the court had in mind to support the [§ 2D1.1(b)(1)] enhancement" in this case, our review is de novo.[9]

---

[5] Without the two-point firearm enhancement, Sincleair's guidelines range would be 168 to 210 months of imprisonment.

[6] *United States v. Trujillo*, 502 F.3d 353, 356 (5th Cir. 2007).

[7] *United States v. Suchowolski*, 838 F.3d 530, 532 (5th Cir. 2016).

[8] 615 F.3d 388, 390 (5th Cir. 2010).

[9] *See id.* at 391. *Cf. United States v. King*, 773 F.3d 48, 52 (5th Cir. 2014) ("But [*Zapata-Lara*] involved a peculiar situation where the district court did not make any finding at all about whether the defendant personally possessed the firearm or a coconspirator foreseeably possessed it . . . . In contrast, here, it is completely clear that the district court applied the enhancement based on King's personal possession of the firearm, rather than a coconspirator's possession of it.").

No. 20-10495

## III.    DISCUSSION

Section 2D1.1(b)(1) of the Sentencing Guidelines provides for a two-level sentence enhancement "[i]f a dangerous weapon (including a firearm) was possessed." "The Government must prove, by a preponderance of the evidence, that the defendant possessed the weapon."[10] The Government can prove possession in one of two ways for this enhancement to apply. First, it can "prove that the defendant personally possessed the weapon by showing that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant."[11] Otherwise, the Government can prove possession if a co-conspirator[12] "involved in the commission of an offense possessed the weapon" and "the defendant could have reasonably foreseen that possession."[13] This method obviously presupposes proof of a conspiracy between the defendant and the person possessing the weapon.

It is not clear whether the district court determined that Sincleair personally possessed the firearm or that one of Sincleair's "unindicted co-conspirators" possessed it during the commission of an offense. The PSR addendum presents both of these options as possibilities, and the district court did not explain which form of possession it attributed to Sincleair. In such a situation, our circuit precedent supports vacating the sentence and remand for the district court to make the appropriate findings.

---

[10] *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

[11] *Id.* at 764–65 (citation omitted).

[12] *See United States v. Hooten*, 942 F.2d 878, 882 (5th Cir. 1991) (explaining that this method of proving possession "derives from U.S.S.G. § 1B1.3(a)(1) [relating to Relevant Conduct], which renders a defendant accountable for any foreseeable act by a codefendant taken 'in furtherance of the execution of [a] jointly undertaken criminal activity'") (citation omitted).

[13] *Cisneros-Gutierrez*, 517 F.3d at 765 (citation omitted).

In *United States v. Zapata-Lara*, the district court determined that the firearm enhancement was applicable because a handgun was present at the location where the defendant, Zapata-Lara, had brokered a drug deal and was present during the transaction.[14] However, as this Court emphasized, the district court did not explain whether it was applying the enhancement based on Zapata-Lara's personal possession of the handgun or a co-conspirator's possession of the handgun that was reasonably foreseeable to Zapata-Lara.[15] This Court explained that the district court never connected the handgun to a particular co-conspirator, and it is a prerequisite that a co-conspirator knowingly possess the weapon before the court could find that the possession was foreseeable to the defendant.[16] Because there was nothing in the record to link the weapon to any of Zapata-Lara's co-conspirators, this Court concluded that Zapata-Lara could not be held derivatively responsible for it.[17]

Moreover, this Court explained that there was nothing in the record to support the firearm enhancement based on Zapata-Lara's personal possession of the weapon because the "PSR [did] not contain sufficient facts establishing a temporal and spatial relationship of the gun, the drug trafficking activity, and Zapata–Lara."[18] Although the spatial and temporal connection between the handgun and the offense were tenuous at best, the *Zapata-Lara* court decided that it did not need to determine whether the defendant personally possessed the weapon because it could not "be sure what rationale the [district] court had in mind to support the enhancement,

---

[14] 615 F.3d 388, 389 (5th Cir. 2010).

[15] *Id.* at 391.

[16] *Id.* at 390–91.

[17] *Id.* at 391.

[18] *Id.*

based on its limited statement." [19] Therefore, this Court vacated Zapata-Lara's sentence and remanded for resentencing, instructing the district court to "make the appropriate findings and state plainly the basis for its decision" if it determined that the weapon enhancement was applicable. [20]

Similarly, in this case, the district court did not explain the basis for its decision that the two-level firearm enhancement applied to Sincleair. The PSR addendum attempts to attribute both methods of possession—personal and co-conspirator—to Sincleair, but it is not clear that either applies. The PSR and its addendum, which the district court relied on, do not provide enough facts to support a finding that Sincleair was engaged in a drug trafficking conspiracy with Ilczyszyn and Wood[21] such that the firearm, which was never connected to a specific person, was knowingly possessed by a "co-conspirator" and that possession was foreseeable to Sincleair. [22]

Moreover, there is not enough in the record to support the firearm enhancement based on Sincleair's personal possession of the firearm because the PSR did not include sufficient facts establishing a temporal and spatial relationship between the gun, the drug trafficking activity, and Sincleair. The Government (and the probation officer) did not provide any evidence establishing that Sincleair owned the weapon, brought the weapon with him

---

[19] *Id.*

[20] *Id.*

[21] The factual resume that Sincleair signed in support of his plea stated that only Kuhn and Wilbur, who were not at Wood's residence, were involved in a conspiracy with Sincleair to possess methamphetamine with intent to distribute. The factual resume made no mention of Ilczyszyn, Wood, or Markezinis.

[22] Ordinarily, a buyer-seller relationship, which the PSR implied existed between Sincleair and Ilczyszyn, is insufficient to create a conspiracy. *See United States v. Mata*, 491 F.3d 237, 241 (5th Cir. 2007) ("It is well settled that evidence of a buyer-seller relationship is not, by itself, sufficient to support a conviction for conspiracy.").

to Wood's house, or had any other connection to it. Neither the PSR nor any other evidence supports a finding of temporal proximity between Sincleair's drug trafficking activity and the weapon found in Wood's house. The only relevant facts in the PSR are that Sincleair was Ilczyszyn's source for methamphetamine, and Sincleair and Ilczyszyn and their girlfriends were present at Wood's home for a social gathering around the time that Ilczyszyn sold an ounce of methamphetamine to Wood. Thus, the only drug transaction that is documented in the PSR occurred in Wood's home between Ilczyszyn and Wood. Even if it may be inferred that Sincleair sold the methamphetamine to Ilczyszyn, there is no evidence of any temporal proximity between Sincleair's sale and the presence of the weapon; there is no evidence that the sale occurred on the same day, same week, or even same month as Ilczyszyn's sale to Wood. There is  also no evidence that Sincleair promoted or assisted in the sale in any way. The temporal connection between the firearm and any drug trafficking by Sincleair was thus tenuous at best.[23]

Nevertheless, as the *Zapata-Lara* court concluded, we do not need to determine whether Sincleair personally possessed the weapon or whether a co-conspirator (if any) possessed it and the possession was reasonably foreseeable to Sincleair, because we "cannot be sure what rationale the [district] court had in mind to support the enhancement, based on its limited statement."[24]

---

[23] Sincleair's circumstances are distinguishable from cases where the Government puts forth *no facts* supporting an enhancement. Here, there is at least a tenuous connection between Sinclear, the drug trafficking activity, and the firearm. In contrast, where no such evidence is present, the Government fails to meet its burden and reversal is appropriate.

[24] *See Zapata-Lara,* 615 F.3d at 391.

For the foregoing reasons, we VACATE the sentence and REMAND for resentencing. If, on remand, the district court determines that the two-level firearm enhancement is applicable, "it should make the appropriate findings and state plainly the basis for its decision."[25] We express no view on what sentence the district court should impose on remand.

---

[25] *See id.*

No. 20-10495

Andrew S. Oldham, *Circuit Judge*, dissenting:

The majority faults the district court for being unclear about which theory of firearm possession supported its sentencing enhancement. But the district court's explanation was pellucid. Then the majority claims the record does not support the enhancement anyway. That's wrong too. I respectfully dissent.

I.

The Sentencing Guidelines provide a two-point offense-level increase where "a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). Our precedent in turn provides the Government with two alternative routes for satisfying § 2D1.1(b)(1):

> First, the Government can prove that the defendant personally possessed the weapon by showing that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant. Alternatively, when another individual involved in the commission of an offense possessed the weapon, the Government must show that the defendant could have reasonably foreseen that possession.

*United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764–65 (5th Cir. 2008) (quotation omitted).

Here, the district court plainly relied on the first of these two theories—personal possession of the firearm by the defendant. The PSR says U.S.S.G. § 2D1.1(b)(1)'s sentencing enhancement applies because "CCSO executed a search warrant at a residence where a methamphetamine transaction was taking place[,] [t]he defendant was present for the transaction, and a firearm was present on a table during this transaction." In other words: (1) There was a drug deal, (2) Sincleair was there, and (3) there was a gun on the table for the duration of the deal. Those factual findings—

which the district court adopted—*directly* track the requirements for the first theory of "personal possession." The PSR, aside from changing the order of the three prongs, practically copied-and-pasted the text of our precedent. The district court therefore was perfectly justified in accepting and following the PSR.

The majority's only real response is to paint the PSR (and by implication, the district court) as "attempt[ing] to attribute both methods of possession—personal and co-conspirator—to Sincleair." *Ante*, at 9. But this is a misreading. The PSR's mention of the co-conspirator theory (*i.e.*, the second way to establish "personal possession") was made in the alternative: "The probation officer *also* supports the 2-level enhancement in paragraph 21, *even if the defendant did not personally possess the firearm* present at the methamphetamine transaction." (emphases added). Giving two alternative and independent bases for a conclusion is not the same as hemming and hawing between those alternatives.

## II.

The record supports the district court's finding that Sincleair personally possessed the weapon. The PSR expressly links Sincleair both to the drug transaction between Ilczyszyn and Wood and to the gun that was sitting nearby: It notes that Sincleair "was present for the transaction, and a firearm was present on a table during th[e] transaction." Both of those statements, the PSR explains, come from "investigative material compiled and prepared by the [DEA]" that was "clarified and corroborated" by a DEA agent and "considered reliable by [a] probation officer." Thus, the record establishes the required connections among weapon, trafficking, and defendant. *See Cisneros-Gutierrez*, 517 F.3d at 764–65.

The majority makes five claims in its effort to resist this conclusion. But each claim is either undercut by the record or has no bearing on this case.

First, the majority claims there was no evidence Sincleair "owned" the gun, "brought [it] with him to Wood's house, or had any other connection to it." *Ante*, at 9. This claim is entirely irrelevant. The majority operates on the ungrounded assumption that owning or toting a weapon are prerequisites for *possessing* it. The majority's understanding of possession is squarely foreclosed by our test for possession—which requires a mere "temporal and spatial relation" between the gun and the defendant. *See Cisneros-Gutierrez*, 517 F.3d at 764–65.

Second, the majority claims Sincleair was at Wood's home only for a "social gathering." *Ante*, at 10. Sincleair did try to rebut the PSR's evidence by stating in an objection that he and Ilczyszyn showed up to Wood's house for a social gathering and not for a drug deal. But he offered no evidence to that effect, so the district court was permitted to "disregard his unsworn assertions." *United States v. King*, 773 F.3d 48, 54 (5th Cir. 2014). And the court did precisely that when it adopted the PSR.

Finally, the majority claims that (3) "the only drug transaction that is documented in the PSR occurred in Wood's home between Ilczyszyn and Wood," (4) "[t]here is . . . no evidence that Sincleair promoted or assisted in the [Ilczyszyn-Wood] sale in any way," and (5) "there is no evidence of any temporal proximity between Sincleair's sale [to Ilczyszyn] and the presence of the weapon." *Ante*, at 10.

These last claims all center on the idea that Sincleair may not have been involved enough in the Ilczyszyn-Wood transaction to warrant the sentence enhancement. But the PSR specifically said Sincleair was Ilczyszyn's methamphetamine supplier, and that Sincleair showed up at Wood's home *so he could be there* for the Ilczyszyn-Wood deal. A drug supplier has an obvious interest in the distribution of his product. And in any event, I repeat that our court requires only a "*temporal* and *spatial* relation" among

the weapon, the drug deal, and the defendant—and there simply is no requirement that the defendant himself be the buyer or the seller. *See Cisneros-Gutierrez*, 517 F.3d at 764–65. The majority offers neither explanation nor justification for its rejection of our precedents.

I respectfully dissent.