# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 8, 2023

Lyle W. Cayce
Clerk

———————

No. 22-10452

———————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

PHILLIP MATTHEW SINCLEAIR,

*Defendant—Appellant*.

———————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-CR-354-2

———————————————————

Before WIENER, GRAVES, and DOUGLAS, *Circuit Judges*.

JACQUES L. WIENER, JR., *Circuit Judge*:[*]

Defendant-Appellant Phillip Matthew Sincleair challenges the district court's reapplication of an enhancement to his 210-month sentence for conspiring to possess with the intent to distribute a mixture and substance containing methamphetamine. For the following reasons, we VACATE Sincleair's sentence and REMAND for resentencing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-10452

Sincleair pleaded guilty to conspiring to possess with intent to distribute a mixture and substance containing methamphetamine. As part of his plea proceedings, Sincleair signed a stipulation that, from late 2016 to June 2017, he conspired with Jade Kuhn and Craig Wilbur to possess methamphetamine with the intent to distribute it. According to the presentence report ("PSR"), a drug trafficking investigation revealed that Kuhn supplied methamphetamine to Sincleair, who then distributed it to others.

On May 18, 2017, during an investigation into methamphetamine distribution, officers of the Cooke County Sheriff's Office ("CCSO") executed a search warrant at a residence owned by Chase Wood (described in the PSR as an "unindicted co-conspirator"). At that residence, officers discovered methamphetamine and detained those present: Sincleair, Wood, Amanda Blackman (Sincleair's girlfriend), Mahalia Markezinis and Mark Ilczyszyn (also described in the PSR as "unindicted co-conspirators"). According to the PSR, the CCSO's investigation revealed that "Sincleair was the methamphetamine [source of supply] for Ilczyszyn, who was the [source of supply] for Wood." The PSR further stated that Sincleair, Ilczyszyn, and Blackman had met at Wood's residence so that Ilczyszyn could distribute one ounce of methamphetamine to Wood. When officers searched the residence, the occupants were sitting in the living room smoking methamphetamine. There was a firearm on a table near the living room couch, but the officers did not determine who owned it.

In calculating Sincleair's offense level, the PSR included a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon. The PSR explained that, during the May 18, 2017 search of the residence where a drug transaction was in progress, Sincleair was present for the transaction and a firearm was found on a table in plain view of all present. *Id*. Sincleair filed written objections, including an objection to the §

2

No. 22-10452

2D1.1(b)(1) firearm enhancement. He argued that his presence at Wood's home on the night of May 18, 2017, was not relevant conduct as part of the alleged drug conspiracy because the firearm was later confirmed to be owned by and registered to Wood. Sincleair asserted that it is "not foreseeable that a firearm would be needed in a social setting amongst two couples involved in recreational drug use."

In response, the probation officer issued an addendum which explained that the May 18, 2017 drug transaction was relevant conduct because Sincleair was Ilczyszyn's source of methamphetamine and was present for the drug transaction between Ilczyszyn and Wood. The addendum further noted that the firearm's connection to the methamphetamine transaction was "probable." Based on Sincleair's total offense level of 35 and Category V criminal history, his advisory U.S. Sentencing Guidelines ("Guidelines") imprisonment range would typically be 262 to 327 months. However, his statutory maximum sentence was 240 months, which is what the PSR listed as the Guidelines term of imprisonment.

At sentencing, the district court tentatively overruled Sincleair's objection to the § 2D1.1(b)(1) enhancement. That court did not make specific fact findings, but instead adopted the statements of fact made in the PSR "subject to and including changes and qualifications made" in the PSR addendum, except for the findings on issues related to the sustained objections. The district court calculated a new offense level of 33 based on the sustained objections, resulting in a Guidelines imprisonment range of 210 to 262 months of imprisonment. That court ultimately sentenced Sincleair to 210 months of imprisonment. He received credit for time served in a related

No. 22-10452

state court case,[1] resulting in a net term of imprisonment of 194 months and 24 days.[2]

Sincleair appealed, challenging the § 2D1.1(b)(1) enhancement.[3] *United States v. Sincleair*, 16 F.4th 471, 473 (5th Cir. 2021). This court vacated his sentence and remanded the case for resentencing. *Id.* at 477. We reasoned that "[t]he PSR addendum attempts to attribute both methods of possession—personal and co-conspirator—to Sincleair, but it is not clear that either applies."[4] *Id.* at 475–76 (noting that the district court did not explain which form of possession it attributed to Sincleair). We instructed the district court on remand to "make the appropriate findings and state plainly the basis for its decision" if it determined that the enhancement was still applicable. *Id.* at 477 (quoting *United States v. Zapata-Lara*, 615 F.3d 388, 391 (5th Cir. 2010)).

On remand, the probation officer prepared a second addendum to Sincleair's PSR, reiterating the initial PSR's findings that Sincleair was identified as a source of supply of methamphetamine for Ilczyszyn, who then sold the drugs to Wood, and that they all met on May 18, 2017, so that Ilczyszyn could supply one ounce of methamphetamine to Wood. The

---

[1] Case no. CR17-00306 in the 235th Judicial District Court, Cooke County, Texas.

[2] Sincleair's projected release date is March 11, 2029. *See* https://inmate.tdcj. texas.gov/InmateSearch/start (TDCJ # 02251300).

[3] Without the enhancement, the Guidelines range would have been 168 to 210 months of imprisonment. *United States v. Sincleair*, 16 F.4th 471, 474 n.5 (5th Cir. 2021). Sincleair alleges that the firearm enhancement also prohibits him from partaking in certain programs within the Bureau of Prisons.

[4] Judge Oldham dissented in the opinion, asserting that the district court's rationale for applying the § 2D1.1(b)(1) enhancement was very clear. *Id.* at 477–79. Judge Oldham further asserted that the record supports the enhancement under the personal possession theory. *Id.* at 478–79.

addendum further detailed that "a firearm was present in plain view on a table near the sofa where Sincleair and the others were sitting and smoking methamphetamine when officers arrived." As to whether Sincleair personally possessed the firearm, the second addendum acknowledged that there was no evidence that Sincleair owned the firearm or brought the firearm to the house, or that Sincleair actively engaged in any drug transactions while the firearm was present. The probation officer added that the district court must determine if § 2D1.1(b)(1) remains applicable and, if so, that the court "must make the necessary findings that either Sincleair personally possessed the firearm or if the firearm was possessed by a coconspirator during the offense." In a written response, Sincleair "persist[ed] in his objection" to the firearm enhancement.

Prior to resentencing, the district court issued written Findings and Conclusions ("FAC") to discuss its application of the § 2D1.1(b)(1) enhancement. The court stated that, on May 18, 2017, officers discovered a Ruger "lying out on a living-room table near the couch, within easy access of all," and that Sincleair's purpose for going to Wood's house "was to accompany Ilczyszyn in his distribution of one ounce of the methamphetamine that Sincleair had supplied to [him] and apparently, to join in the smoking of the Sincleair-supplied methamphetamine while they were there." The district court determined that Sincleair had constructive possession of the firearm while engaging in part of his drug conspiracy, as he had knowledge of, and immediate access to, the firearm "lying in plain view on a table near him." The court also concluded that the enhancement likely applies under the co-conspirator possession theory. It stated that there was a temporal and spatial relationship between Sincleair and the drug trafficking offense, as he was the "ultimate supplier" of the methamphetamine involved in the transaction at Wood's house.

At resentencing, Sincleair objected to the district court's FAC. He called as a witness Blackman, who testified that she and Sincleair traveled to Wood's house with Ilczyszyn on May 18, 2017, that there was no discussion of a firearm, and that she did not see a firearm at the house. Blackman described the house as "a little efficiency" with the bed, living room, and kitchen all in one small area. Blackman stated that she was looking at her phone and did not pay attention to what was happening in the house until the officers arrived. She denied that there was a firearm present on the coffee table or TV table when she and Sincleair arrived at the house and denied ever seeing a firearm near the sofa. On questioning by the court, Blackman affirmed that it was possible a firearm was present, but that she did not notice or see it. Sincleair too also offered evidence that Wood owned the firearm. After hearing argument from the parties, the district court overruled Sincleair's objection to the written FAC and adopted as its "final findings of fact the statements of fact made in the [PSR], subject to and including changes and qualifications made by the addendum to the [PSR] . . . and the findings and conclusions just announced."

The district court determined that Sincleair's total offense level was 33 and that his Guidelines range of imprisonment was 210 to 262 months. The court sentenced Sincleair to the same term of 210 months of imprisonment, with credit for time served, to be followed by three years of supervised release. Sincleair did not make any further objections. He timely appealed. *See* Fed. R. App. P. 4(b)(1)(A)(i).

## II. STANDARD OF REVIEW

The district court's interpretation and application of the Guidelines is subject to *de novo* review. Its factual findings are reviewed for clear error. *Sincleair*, 16 F.4th at 474. In Sincleair's first appeal, this court reviewed the district court's enhancement application *de novo* because "the district court

did not explain the basis for its decision that the two-level firearm enhancement applied to Sincleair." *Sincleair*, 16 F.4th at 475 (quoting *Zapata-Lara*, 615 F.3d at 391). In doing so, we relied on our previous opinion in *Zapata-Lara*, in which we reviewed *de novo* the district court's application of the § 2D1.1(b)(1) enhancement.[5] *Id.*

On the other hand, clear error exists "if a review of the record results in a definite and firm conviction that a mistake has been committed." *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013) (internal quotation marks and citation omitted). "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *Id.*; *see also United States v. Hebert*, 813 F.3d 551, 560 (5th Cir. 2015) ("[U]nder clear error review, even [w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (internal quotation marks and citation omitted)). Moreover, "a district court is permitted to draw reasonable inferences from the facts, and these inferences are fact-findings reviewed for clear error as well." *United States v. Caldwell,* 448 F.3d 287, 290 (5th Cir. 2006) (citation omitted).

The question here is whether Sincleair's challenge concerns only the legal sufficiency of the facts underlying the § 2D1.1(b)(1) enhancement or whether it also includes the district court's findings of fact. Sincleair does not take a position on the appropriate standard of review and discusses both *de novo* and clear error review in his briefing. He does not, however, expressly challenge the district court's specific findings of fact on remand. Rather, he

---

[5] In that case, *de novo* review was appropriate because of "the district court's purely legal application of the sentencing guidelines." *Id.* at 391. We explained that "Zapata–Lara's argument does not concern the specifics of the factfinding, but, rather, whether the facts found are legally sufficient to support the enhancement." *Id.* (quoting *United States v. Hooten*, 942 F.2d 878, 881 (5th Cir. 1991)).

contends that the district court made no new findings of fact, and that the court's reliance on the same previous facts at resentencing, which this court previously deemed insufficient to support the enhancement, is error. Sincleair contends that the record, as it stands, cannot support the enhancement because there are no facts that sufficiently connect him to the handgun at issue under the elements of personal or co-conspirator possession.

The government, on the other hand, contends that this court should review the enhancement application for clear error. Relying on *United States v. King*, 773 F.3d 48, 52 (5th Cir. 2014), the government claims that clear error review is appropriate because the district court has now explained its rationale for applying the enhancement: personal, constructive possession. The government asserts that, as a result, the instant appeal relates only to the factual findings underpinning the enhancement application.

"It is well-established that our court, not the parties, determines the appropriate standard of review." *United States v. Suchowolski*, 838 F.3d 530, 532 (5th Cir. 2016). As we explain further below, no new factual findings were presented in the second addendum to the PSR, nor were any made at resentencing.[6] Therefore, Sincleair's appeal entails a purely legal application of the Guidelines, warranting *de novo* review. Sincleair separately contests the district court's alleged failure to resolve disputed factual issues (and thus

---

[6] The only finding of fact potentially made was that "Sincleair was present for and likely a knowing participant in the drug transaction between [Ilczyszyn and Wood]," as the PSR did not mention Sincleair's "knowledge" or the degree of Sincleair's participation in the drug transaction. However, this finding does not pass muster under the clear error standard because it is unsupported by the record. The second addendum to the PSR actually contradicts it, stating that there was "no evidence that Sincleair engaged in drug transactions" at Wood's residence, "or that he assisted in any transactions."

No. 22-10452

make specific factual findings) under FED. R. CRIM. P. 32(i)(3)(B), which we review under the plain error standard.

## III. ANALYSIS

On appeal, Sincleair asserts that the district court erred in applying the § 2D1.1(b)(1) enhancement. He contends that the district court failed to follow this court's mandate on remand because it "relied on the same information that formed the basis for the firearm enhancement. . . which the Court found lacking." Sincleair asserts that, at resentencing, the government did not present any new facts and that the district court did not consider Blackman's testimony regarding the firearm at issue. Sincleair alternatively argues that the district court failed to comply with Federal Rule of Criminal Procedure 32(i)(3)(B) because it did not consider or credit Blackman's testimony.[7]

### A. Application of the § 2D1.1(b)(1) enhancement

The § 2D1.1(b)(1) enhancement applies if a "dangerous weapon (including a firearm) was possessed" during the drug offense, § 2D1.1(b)(1), "unless it is clearly improbable that the weapon was connected with the offense," § 2D1.1, cmt. n.11(A). For the enhancement to apply, the government must show by a preponderance of the evidence "that a temporal and spatial relation existed between the weapon, the drug trafficking activity,

---

[7] Although Rule 32(i)(3)(B) was likely violated, Sincleair's challenge fails because he did not appropriately brief it. Sincleair did not raise this issue at resentencing, so plain error review applies. *See Puckett v. United States*, 556 U.S. 129, 134-35 (2009); *see also United States v. McMillion*, 827 F. App'x 395, 398 (5th Cir. 2020) (unpublished) (applying plain error review where defendant did not raise his Rule 32(i)(3)(B) objection in the district court). Under plain error review, Sincleair was required to show forfeited error that is clear or obvious *and* that affects his substantial rights. *See Puckett*, 556 U.S. at 135. Sincleair did not state how his substantial rights were affected or how he suffered prejudice from the court's alleged Rule 32 violation. We therefore do not further consider this challenge.

and the defendant." *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764–65 (5th Cir. 2008) (quoting *United States v. Hooten*, 942 F.2d 878, 882 (5th Cir. 1991)). "Alternatively, when another individual involved in the commission of an offense possessed the weapon, the government must show that the defendant could have reasonably foreseen that possession." *United States v. Rodriguez-Guerrero*, 805 F.3d 192, 195 (5th Cir. 2015) (internal quotation marks and citation omitted). "If the government satisfies this burden, then the burden shifts and the defendant must show that it is clearly improbable that the weapon was connected to the offense." *Id.*

In the instant appeal, Sincleair argues that the district court procedurally erred in applying the enhancement at resentencing because (1) it relied on facts that were deemed insufficient by the Fifth Circuit in his first appeal and (2) it "incorrectly characterize[d] facts contained in the PSR and addendum." He contends that the district court's FAC "relied on nothing more than the PSR and original addendum" and that the second addendum to the PSR "contained no additional facts." Sincleair also asserts that the district court disregarded this court's directive to plainly state its basis for his sentence by merging the theories of constructive and personal possession and then imposing the same § 2D1.1(b)(1) enhancement without any additional evidence to support it. Sincleair further alleges that the district court erred by "embellishing those facts contained in the PSR in support of the firearm enhancement, without further evidence confirming those facts." He goes on to assert that the district court ignored the testimony of Blackman, who provided evidence that Sincleair did not exercise personal or co-conspirator possession of the handgun at issue.

The government counters that the district court did not clearly err in applying the § 2D1.1(b)(1) enhancement at resentencing because it clarified its rationale for applying the enhancement, which is supported by the record. The government asserts that the district court, in accordance with this

No. 22-10452

court's mandate, plainly stated that it *solely* relied on a personal, constructive possession theory in its application of the enhancement. The government further asserts that the record as a whole supports this finding because there was "a temporal and spatial relationship between Sincleair, his drug trafficking activity, and the Ruger pistol." According to the government, although Sincleair was not directly engaged in the methamphetamine sale between Wood and Ilczyszyn, the district court correctly found that Sincleair "was present for and likely a knowing participant in the drug transaction" and "the ultimate supplier of the methamphetamine involved in the transaction." Relying on this court's opinions in *United States v. Vital*, 68 F.3d 114, 119 (5th Cir. 1995) and *King*, 773 F.3d 48, the government asserts that § 2D1.1(b)(1) applies because the handgun was connected to Sincleair's relevant conduct.

The record does not support the district court's application of the § 2D1.1(b)(1) enhancement a second time under either the constructive or the co-conspirator theories of possession. At resentencing, the government was unable to demonstrate a temporal and spatial relation between the Ruger, Wood and Ilczyszyn's drug trafficking activity, and Sincleair. Moreover, the district court did not definitively state that the enhancement was based on constructive or co-conspirator possession. Neither did it make any additional findings regarding these theories. It merely "adopt[ed] as its final findings of fact the statements of fact made in the [PSR], subject to and including changes and qualifications made by the addendum to the [PSR] . . . and the [FAC] just announced." The second addendum to the PSR expressed doubts about applying the enhancement, and the FAC is based on facts that we previously deemed insufficient under either theory.

In Sincleair's first appeal, we noted that the key PSR facts included: "Sincleair was Ilczyszyn's source for methamphetamine, and Sincleair and Ilczyszyn and their girlfriends were present at Wood's home for a social

11

gathering around the time that Ilczyszyn sold an ounce of methamphetamine to Wood." *Sincleair*, 16 F.4th at 473. The second addendum to the PSR did not add any new facts to support the § 2D1.1(b)(1) enhancement. Rather, the second addendum expressed doubt about applying the enhancement under both the personal and the co-conspirator possession theories. The second addendum explained that "[t]here was no evidence Sincleair owned the firearm or brought the weapon to the transaction or was otherwise connected to the firearm. Additionally, there was no evidence that Sincleair engaged in any drug transactions while the weapon was present, or that he assisted in any transactions."

The second addendum to the PSR also expressed doubts about applying the enhancement based on co-conspirator possession, stating:

> none of the individuals present with the defendant and the firearm are charged as coconspirators or mentioned in the Factual Resume. The only individual that Sincleair is known to engage in drug distribution with was Ilczyszyn; however, [as] the Fifth Circuit noted in *United States v. Mata*, 491 F.3d 237, 241 (5th Cir. 2007) it was found that 'evidence of a buyer-seller relationship is not, by itself, sufficient to support a conviction for conspiracy.' Further, there is no evidence the defendant assisted in a methamphetamine transaction between Ilczyszyn or Wood on this occasion.

The second addendum noted that if the court reapplied the enhancement, it would have to do so based on the same facts that it previously relied on, i.e., that Sincleair "was near the gun, which was in plain view and smoking methamphetamine" and "a coconspirator 'involved in the commission of an offense' possessed the weapon and 'the defendant could have reasonably foreseen that possession.'"

The FAC relies on the PSR and its second addendum to support the constructive possession rationale. The FAC asserts that "Sincleair had clear 'knowledge and access to the weapon'" because "[the firearm] was lying in

plain view on a table near him." However, we previously concluded that the same, PSR-sourced facts were insufficient to support personal possession because they do not demonstrate "a temporal and spatial relationship between the gun, the drug trafficking activity, and Sincleair." *Sincleair*, 16 F.4th at 476. The district court cited *United States v. McKnight*, 953 F.2d 898, 902 (5th Cir. 1992), in support of its conclusion, asserting that "even if none of the weapons belonged to [Sincleair], he had immediate access to them." However, *McKnight* involved a situation where five guns were strewn about the *defendant*'s home in plain view, with additional evidence connecting the defendant to these firearms. *Id.* Here, the Ruger was not located in Sincleair's own home, and Sincleair presented compelling evidence that the firearm belonged to Wood.

Even if the government had met its burden of showing that "a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant," Sincleair offered rebuttal evidence that was not properly considered at resentencing. Under this circuit's burden-shifting framework, once the government makes its showing, "the burden shifts and the defendant must show that it is clearly improbable that the weapon was connected to the offense." *Rodriguez-Guerrero*, 805 F.3d at 195. At resentencing, the district court stated that, through the FAC, it "has determined that the facts do not support a finding that it is clearly improbable that the weapon was counted -- was connected with this offense." During the proceedings, however, Sincleair presented the testimony of Blackman, who provided more information and context about the Ruger at issue. Sincleair also offered a portion of the transcript from the Texas state court case against Wood, during which he admitted that he owned the Ruger that was seized on May 18, 2018. Rather than addressing these factual disputes, the district court chose not to address them at all, as explained further below under Issue

No. 22-10452

3. Instead, the district court chose to apply the § 2D1.1(b)(1) enhancement once more, based on the same facts that we previously deemed insufficient.

Assuming that the district court relied on the co-conspirator possession theory instead, the record remains deficient to support the enhancement. In *Sincleair*, we explained that the PSR and its addendum "d[id] not provide enough facts to support a finding that Sincleair was engaged in a drug trafficking conspiracy with Ilczyszyn and Wood" and that the "temporal connection between the firearm and any drug trafficking by Sincleair was . . . tenuous at best." *Id.* at 477. Moreover, the second addendum to the PSR casts doubt on the viability of this rationale, explaining that "none of the individuals present with the defendant and the firearm are charged as coconspirators or mentioned in the Factual Resume. The only individual that Sincleair is known to engage in drug distribution with was Ilczyszyn." The second addendum cited *United States v. Mata*, wherein this court held that "evidence of a buyer-seller relationship is not, by itself, sufficient to support a conviction for conspiracy." 491 F.3d 237, 241 (5th Cir. 2007).

We conclude, under the *de novo* standard of review, that the record does not support the district court's reapplication of the § 2D1.1(b)(1) enhancement under either the constructive or co-conspirator possession theories. We turn next to the question whether the district court failed to comply with our mandate in *Sincleair*.

### B. Whether the district court complied with our mandate in Sincleair

The mandate rule "provides that a lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court." *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002) (citing *United States v. Becerra*, 155 F.3d 740, 753 (5th Cir. 1998)). "Absent exceptional circumstances, the

mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004). "In the context of remands for resentencing, this circuit employs a restrictive approach: The resentencing court may consider only that which we direct— no more, no less." *United States v. Pineiro*, 470 F.3d 200, 205 (5th Cir. 2006). Additionally, "[a]ll other issues not arising out of this court's ruling and not raised before the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below." *United States v. Marmolejo*, 139 F.3d 528, 531 (5th Cir. 1998).

We previously remanded this matter because we could not "be sure what rationale the court had in mind to support the [§ 2D1.1(b)(1)] enhancement." *Sincleair*, 16 F.4th at 475 (quoting *Zapata-Lara*, 615 F.3d at 391). Although we declined to take a position on the appropriate sentence to be imposed, we emphasized the lack of evidence in the record to support the district court's application of the enhancement under either the personal or the co-conspirator possession theories. *Id.* at 477. We then provided specific instructions to the district court on remand, stating that "[i]f, on remand, the district court determines that the two-level firearm enhancement is applicable, it should make the appropriate findings and state plainly the basis for its decision." *Id.* (internal quotation marks and citation omitted). We now look to the district court's FAC and its statements at resentencing to determine whether it complied with our mandate.

The government claims that the district court relied *solely* on the constructive possession theory and that it made this clear to the parties at resentencing. That is not the case, however. At resentencing, the court only indirectly endorsed the constructive possession theory, stating that "the facts do not support a finding that it is clearly improbable that the weapon was counted – was connected with this offense or that you were not in

constructive possession of that weapon." The district court further stated that it had adopted as its "final findings of fact the statements of fact made in the [PSR], subject to and including changes and qualifications made by the addendum to the [PSR] . . . and the [FAC] just announced." As noted above, the second addendum to the PSR actually casts doubt on both the constructive and co-conspirator possession rationales. Moreover, the FAC does not "state plainly" the district court's basis for applying the enhancement.

The FAC does not clearly indicate that the district court relied solely on the constructive possession theory. The FAC states that "Sincleair had constructive possession over the firearm," but then continues, in the next paragraph, to state "[w]hile not directly engaged in the methamphetamine sale between Wood and Ilczyszyn, Sincleair was present for and likely a knowing participant in the drug transaction between the two." The next three pages of the FAC are devoted mostly to a discussion of co-conspirator possession. During various points in that discussion, however, the FAC references elements of constructive rather than co-conspirator possession. It is therefore unclear which rationale the district court relied on for its application of the § 2D1.1(b)(1) enhancement. The district court instead merged both theories into its analysis.

Because the district court did not clearly state its rationale for reapplying the enhancement at resentencing or in the FAC, it did not "implement both the letter and the spirit of the appellate court's mandate." *See Matthews*, 312 F.3d at 657. We therefore conclude that the district court violated our mandate in *Sincleair* to "make the appropriate findings and state plainly the basis for its decision" 16 F.4th at 477.

## IV. CONCLUSION

For these reasons, we again VACATE Sincleair's sentence and REMAND for resentencing in a manner consistent with this opinion and within the limits of our mandate in *Sincleair*, 16 F.4th at 477.